[No. 42355-0-I. Division One. January 2, 2001.]

THE STATE OF WASHINGTON, *Respondent*, v. VERNON CLAUSING, *Appellant*.

76

*James R. Dixon* (of *Nielsen, Broman & Associates, P.L.L.C.*), for appellant.

*Norm Maleng, Prosecuting Attorney*, and *William M. Berg, Deputy*, for respondent.

AGID, C.J. — Vernon Clausing appeals his convictions for possession with intent to deliver and delivery of legend drugs under chapter 69.41 RCW. He claims that several key jury instructions misstated the elements of the charged crimes and/or lessened the State's burden of proof, the charging document was defective, the trial court erred in admitting evidence from the executive director of the Board of Pharmacy, and prosecutorial misconduct in closing argument deprived him of a fair trial. We find none of his arguments persuasive and affirm.

## FACTS

In April 1995, the Washington State Board of Osteopathic Medicine and Surgery found that Clausing, a doctor of osteopathic medicine who operated the Community Family Practice Clinic in Burien, had committed unprofessional conduct by negligently prescribing the legend drugs[1] Carisoprodal (Soma) and Nalbuphine (Nubain) for "other than legitimate or therapeutic purposes" and revoked his medical license.[2]

In an attempt to continue operating the clinic and its attached dispensary, Clausing hired two licensed physicians, Dr. John Fischer and Dr. Robert Riley. Dr. Fischer worked in the clinic for only two days. During that time, he wrote a few prescriptions for Soma and Nubain, although he was "not accustomed to prescribing them in the volumes and in the frequency that occurred those two short days." Dr. Riley, who worked intermittently during the summer of

---

[1] RCW 69.41.010(10) defines legend drugs as "any drugs which are required by state law or regulation of the state board of pharmacy to be dispensed on prescription only . . . ."

[2] *See Clausing v. State*, 90 Wn. App. 863, 866, 955 P.2d 394, *review denied*, 136 Wn.2d 1020 (1998).

1995, never prescribed Soma or Nubain. As the "clinic manager," Clausing continued to fill and refill what he claimed were valid prescriptions for Soma and Nubain. Clausing admits that "[u]sing the prescription drug number of the doctors working at the clinic, the clinic was able to order the necessary supplies" and that the "doctors who were working at the clinic did not necessarily know that the number they supplied was being us[ed] to purchase drugs for the clinic."

In July 1995, Sheryl Reynaga, a former patient and volunteer employee of Clausing's, notified King County police that Clausing was still distributing Soma and Nubain to his former patients. In late July and early August, with Reynaga's assistance, police initiated a sting operation at Clausing's home and clinic. On July 27, Reynaga obtained Soma and Nubain directly from Clausing at his clinic, and on August 1 and 9, Clausing gave Reynaga additional supplies of both drugs at his home. On August 14, Reynaga again attempted to obtain drugs from Clausing's home, but when Clausing became suspicious and refused her request, police terminated their investigation. Three days later, a search of Clausing's home and clinic revealed large quantities of Soma and Nubain in "bulk-type plastic bottles." Clausing also had a supply of Vicodin tablets in his kitchen cabinet.

Clausing was charged with three counts of unlawful delivery of a legend drug and one count of possession with intent to deliver a legend drug, one count of possession of a controlled substance, and one count of conspiracy to commit violations of the legend drug act.

At trial, Clausing defended against these charges by arguing that because RCW 69.41.030 provides only that it is unlawful to sell, deliver, or possess legend drugs without a valid order or prescription, any unlicensed person can deliver a legend drug to a patient who has a valid prescription. Essential to this argument is Clausing's contention that Reynaga had a valid prescription for Soma and Nubain. Because Clausing neither produced evidence of

this prescription at trial nor was able to state who he believed had issued it or when, it was not clear whether he claims to have issued this prescription before his license was revoked or whether he believed another doctor in the clinic had issued the prescription.

The jury found Clausing guilty of possessing a controlled substance, acquitted him on the conspiracy charge, and was unable to reach a verdict on the three counts of delivery and one count of possession. After a second trial, the jury found him guilty of the other four counts. He appeals.

## DISCUSSION

Clausing first contends that jury instructions 17 and 25 misstate the requirements of RCW 69.41.030 by directing that legend drugs must be dispensed by a licensed practitioner before there can be a lawful delivery to a patient with a valid prescription. RCW 69.41.030 prohibits the sale, delivery, or possession of legend drugs without a valid prescription or order, subject to certain exceptions:

> It shall be unlawful for any person to sell, deliver, or possess any legend drug except upon the order or prescription of a physician . . . . PROVIDED, HOWEVER, That the above provisions shall not apply to sale, delivery, or possession by drug wholesalers or drug manufacturers, or their agents or employees, or to any practitioner acting within the scope of his or her license . . . .

The trial judge deemed this provision "less than well written," and we agree. But after reading chapter 69.41 RCW in its entirety together with chapter 18.64 RCW, which governs pharmacies and pharmacy licensing, the judge endorsed the following interpretation of RCW 69.41.030 in jury instructions 17 and 25:

> It is not unlawful to deliver a legend drug if the legend drug either: 1) is dispensed by a licensed practitioner upon the order or prescription of a licensed physician or osteopathic physician; or 2) is delivered by a practitioner acting within the scope of his or her license.

The State has the burden of proving beyond a reasonable doubt that the legend drugs in Counts I, II, and III were not dispensed by a licensed practitioner upon the order or prescription of a licensed physician and that they were not delivered by a practitioner acting within the scope of his or her license.[3]

Clausing objects to the "dispensed by a licensed practitioner" language, maintaining, as he did at trial, that "it isn't the physician who dispenses it. It is his employees . . . ." To determine whether these instructions violated Clausing's due process rights, we review the statute de novo to determine whether jury instructions 17 and 25 are accurate statements of law.[4]

■ It is first necessary to define the key terms at issue here. Chapter 69.41 RCW, entitled "Legend Drugs—Prescription Drugs," begins with a definition section that distinguishes between delivering and dispensing legend drugs. "[D]elivery" is "the actual, constructive, or attempted transfer from one person to another of a legend drug,"[5] while "dispense" means "the interpretation of a prescription or order for a legend drug and, pursuant to that prescription or order, the proper selection, measuring, compounding, labeling, or packaging necessary to prepare that prescription or order for delivery."[6] Because the statute further defines "dispenser" as "a practitioner who dispenses,"[7] chapter 69.41 RCW unequivocally precludes nonpractitioners like Clausing from interpreting a prescription for a legend drug and/or preparing it for delivery. Clausing's trial

---

[3] Instruction 25 was identical to instruction 17, but substituted "possess with intent to deliver" for "deliver" in instruction 17 to correspond with the possession charge.

[4] A criminal defendant is entitled to jury instructions that accurately state the law, permit him to argue his theory of the case, and are supported by the evidence. *State v. Staley*, 123 Wn.2d 794, 803, 872 P.2d 502 (1994). Jury instructions are reviewed de novo, *State v. Pirtle*, 127 Wn.2d 628, 656, 904 P.2d 245 (1995), *cert. denied*, 518 U.S. 1026 (1996), and construed as a whole. *State v. Brett*, 126 Wn.2d 136, 172, 892 P.2d 29 (1995), *cert. denied*, 516 U.S. 1121 (1996).

[5] RCW 69.41.010(2).

[6] RCW 69.41.010(4).

[7] RCW 69.41.010(5).

objection—that "it isn't the physician who dispenses it. It is his employees"—is therefore incorrect.

On appeal, Clausing focuses on delivering rather than dispensing, arguing that it is irrelevant under RCW 69.41.030 who actually delivers legend drugs, provided the person to whom they are delivered has a valid prescription. Clausing is correct that RCW 69.41.030 makes no mention of *dispensing* legend drugs, and that nothing in that statute requires that a physician or licensed practitioner deliver, or physically transfer, legend drugs to patients with valid prescriptions. The fact remains, however, that unless they are delivered by a practitioner, prescriptions delivered to patients with prescriptions must first be *dispensed, or prepared for delivery*, by a practitioner. They may then be lawfully delivered to a person with a valid order or prescription, regardless of whether the person delivering them is a licensed practitioner or physician.

Because this is the only reasonable reading of chapter 69.41 RCW, instructions 17 and 25, which state that it is not unlawful to deliver or possess with intent to deliver a legend drug that "is dispensed by a licensed practitioner upon the order or prescription of a licensed physician or osteopathic physician" or "delivered by a practitioner acting within the scope of his or her license," are accurate, comprehensive statements of law. These instructions do not, as Clausing argues, contravene the clear language of RCW 69.41.030 by requiring that "the person making the delivery must himself be a licensed practitioner, even if there is a valid order or prescription." As the trial judge recognized, because RCW 69.41.030 does not directly address dispensing, it was necessary to add the "dispensed by a licensed practitioner" language. The instructions incorporate that requirement in order to clearly reflect the elements of chapter 69.41 RCW.

Clausing next contends that if instructions 17 and 25 accurately stated the law, the charging document was

defective.[8] All essential elements of a crime, statutory or otherwise, must be included in a charging document in order to give the defendant notice of the nature and cause of the crime charged so that the accused may prepare an adequate defense.[9] Charging documents challenged for the first time on appeal are "construed liberally and will be found sufficient if the necessary elements appear in any form, or by fair construction may be found, on the face of the document."[10] If there is some language, however inartful, relating to the necessary elements, the burden shifts to the defendant to demonstrate actual prejudice.[11]

 Clausing was charged under RCW 69.41.030, which, as previously noted, provides that:

> It shall be unlawful for any person to sell, deliver, or possess any legend drug except upon the order or prescription of a physician . . . . PROVIDED, HOWEVER, That the above provisions shall not apply to sale, delivery, or possession by . . . any practitioner acting within the scope of his or her license . . . .

Counts I-III in the charging document tracked this statutory language in RCW 69.41.030, stating in relevant part:

> That the defendant VERNON CLAUSING . . . unlawfully and feloniously did deliver legend drugs . . . and was not himself a duly licensed physician or other licensed healthcare professional.[12]

The question is whether this information adequately apprised Clausing that he may be convicted of unlawful delivery even if the person to whom he delivered legend drugs had a valid prescription.

---

[8] This argument involves counts I-III only. Count IV clearly and unequivocally contained the essential elements for a possession conviction.

[9] *State v. Kjorsvik*, 117 Wn.2d 93, 101-02, 812 P.2d 86 (1991).

[10] *State v. McCarty*, 140 Wn.2d 420, 425, 998 P.2d 296 (2000). The remedy for a deficient information is reversal without prejudice. *State v. Vangerpen*, 125 Wn.2d 782, 792-93, 888 P.2d 1177 (1995).

[11] *City of Auburn v. Brooke*, 119 Wn.2d 623, 636, 836 P.2d 212 (1992).

[12] Clausing's recitation of this language on page 24 of his brief inaccurately merges the language of the delivery and possession counts.

We agree with the State that a liberal interpretation allows us to interpret the term "unlawfully" as incorporating the dispensing prerequisite reflected in the jury instructions. Because charging documents need not contain statutory or common law defenses,[13] the information did not have to state that delivery is *not* unlawful if the legend drugs were dispensed by a licensed practitioner pursuant to a valid prescription. Although the information was "inartfully worded," Clausing suffered no resulting prejudice both because the statute as a whole made clear that a prescription cannot be delivered unless lawfully dispensed, and because Clausing failed to produce evidence that Reynaga had a valid prescription at the time he delivered the drugs.

▮ Clausing next challenges instructions 18 and 21 as relieving the State of its obligation to prove that his transfer was unlawful. He contends that the instructions allowed the jury to find Clausing guilty without "having to grapple with the more difficult issue of whether there was a valid order or prescription or whether there was any type of agency relationship." Instruction 18 provided:

> A prescription, in order to be effective in legalizing of legend drugs, must be issued for a legitimate purpose by one authorized to prescribe the use of legend drugs.
>
> An order purporting to be a prescription issued to a drug abuser or habitual abuser of legend drugs, not in the course of professional treatment, is not a prescription within the meaning and intent of the law.

This instruction incorporates the language of RCW 69-.41.040, but it excludes the part of the statute providing that a person filling such an order "may be charged with violation of this chapter" because the trial court recognized that section was irrelevant to the charges against Clausing.

In instruction 21, the court incorporated RCW 69.41.050, which sets out the labeling requirements for legend drugs:

---

[13] *State v. Arseneau*, 75 Wn. App. 747, 753, 879 P.2d 1003 (1994), *review denied*, 126 Wn.2d 1006 (1995).

> To every box, bottle, jar, tube or other container of a legend drug, which is dispensed by a practitioner authorized to prescribe legend drugs, there shall be affixed a label bearing the name of the prescriber, complete directions for use, the name of the drug either by brand or generic name and strength per unit dose, name of patient and date . . . .

At trial, Clausing argued that because the jury was not told that violation of this labeling requirement is a separate crime, this instruction would lead the jury to believe that violation of labeling requirements would constitute unlawful delivery under RCW 69.41.030. The judge agreed with Clausing that improper labeling alone would not support an unlawful delivery conviction, but explained that the instruction should be given because "the statutory requirement relating to dispensing drugs pursuant to a prescription are relevant to the jury deciding whether or not he was doing what he claims he was doing."

Because Clausing's defense was that he lawfully delivered Soma and Nubain upon the order of a physician, the State was entitled to rebut this defense by delineating the requirements for valid prescriptions. The instructions could not have reasonably led the jury to believe that it could convict Clausing of unlawful delivery based solely on the fact the drugs he delivered were improperly labeled. Neither instruction misstated the law or relieved the State of its burden of proof.

Clausing also objects to instruction 12, which is a verbatim restatement of the definition of "dispense" in RCW 69.41.010(4):

> "Dispense" means the interpretation of a prescription or order for a legend drug and, pursuant to that prescription or order, the proper selection, measuring, compounding, labeling, or packaging necessary to prepare that prescription or order for delivery.

Clausing contends that because this instruction "defined prescriptions in terms of interpretation, which is applicable only when the prescription is first being filled," it misled the jury. Clausing is correct that an instruction that mirrors statutory language can nevertheless mislead the

jury,[14] but that is not the case here. This instruction did not preclude him from making his argument that refills are not subject to dispensation requirements, although it is unlikely that the judge would have granted an instruction to that effect. According to WAC 246-869-100(2)(b), "[r]efills for prescription for legend drugs must be authorized by the prescriber prior to the dispensing of the refill prescription." The court did not abuse its discretion in instructing the jury on the definition of *dispense*. Indeed, this instruction was vital to the jury's understanding of the relevant law.

■■ We turn next to Clausing's argument that the court erred in admitting what he claims was irrelevant evidence from Donald Williams, the executive director of the Board of Pharmacy. The State called Williams, an advisor on matters of Board policy, and asked him, hypothetically, whether a prescription written by a doctor whose license is revoked the following day remains valid. Clausing objected, and the jury was excused. After some discussion, the court decided to allow Williams' answer, but instructed the jury that

> the question should not elicit and it's not intended to elicit— and the answers should not be considered by you as a legal opinion—an opinion as to what the law is or what the law is that you would apply in this case.
>
> It's being offered as an opinion from this witness from the perspective of a pharmacist or an employee of the Board of Pharmacy.

Williams then testified that revoking a doctor's license would make preexisting prescriptions issued by that doctor invalid, so that they could not be filled or refilled. The State concedes that this opinion "does not appear to be explicitly supported in statutory law," and indeed, there is no Washington authority for Williams' statement. But the judge instructed the jury that Williams' opinion was not the law, and juries are presumed to follow instructions.[15] In any

[14] *State v. LeFaber*, 128 Wn.2d 896, 900-02, 913 P.2d 369 (1996).

[15] *State v. Hanna*, 123 Wn.2d 704, 711, 871 P.2d 135, *cert. denied*, 513 U.S. 919 (1994).

event, any resulting error was harmless because Clausing never introduced any prescriptions or medical records to corroborate his claim of preexisting authority.[16]

██ Finally, Clausing contends that two remarks by the prosecutor in closing argument deprived him of a fair trial. First, the prosecutor recounted Williams' testimony: "The head of the Board of Pharmacy, the man who in this station is responsible for the regulations [sic] of these drugs, says, 'When you lose your license to practice medicine, your prescriptions are void.'" The defense objected to this statement as a misstatement of facts, and the court sustained the objection. But the prosecutor continued, the "fact remains there was no valid prescription in this case." As for the first statement, the prosecutor was simply recounting Williams' opinion testimony. The second statement—that there was no valid prescription in this case—is, as the State argues, a defensible characterization of the facts because Clausing failed to provide evidence of a valid prescription. There was no misconduct.

Affirmed.

KENNEDY and COX, JJ., concur.

[Nos. 45331-9-I; 45332-7-I; Division One. January 2, 2001.]
45333-5-I; 45334-3-I.

---

[16] Clausing claims that this was because the State seized his medical files, and that "although he had been granted access to the files, Reynaga's most recent medical file had apparently been lost by the police in the shuffle." But, as we noted above, he presented no testimony, not even his own, about who issued a prescription, when it was issued or whether it was still valid when he delivered the drugs.