56 P.3d 550 (2002)
The STATE of Washington, Respondent,
v.
Vernon CLAUSING, Petitioner.
No. 70957-2.
Supreme Court of Washington, En Banc.
Argued June 25, 2002.
Decided October 24, 2002.
*551 Nielssen, Broman & Associates, Eric Nielsen, James Dixon, David Koch, Seattle, for Petitioner.
Norm Maleng, King County Prosecutor, James Whisman, Deputy, Randi Austell, Deputy, Seattle, William Berg, Sandpoint, for Respondent.
*552 SWEENEY, J.[*]
It is unlawful for any person to deliver a legend drug except upon prescription of a physician. RCW 69.41.030. Vernon Clausing is a defrocked osteopathic physician. He delivered a legend drug[1] to a police agent. The State charged him with violating former RCW 69.41.030 (1994). The dispositive question is whether the jury instructions correctly specified the elements of former RCW 69.41.030. The trial court effectively instructed the jury that it was a crime to deliver a legend drug unless delivery was by a licensed practitioner. The statute does not require delivery by a practitioner. The instructions were therefore defective. We also conclude that the trial judge should not have allowed the executive director of the Washington State Board of Pharmacy to answer the legal question of whether a prescription remains effective after the issuing physician loses his license. We therefore reverse the judgment and sentence.

FACTUAL BACKGROUND
The essential facts here are undisputed.
The Washington State Board of Osteopathic Medicine and Surgery revoked the license of Dr. Vernon Clausing in April 1995 for violating RCW 18.130.180[2] by overprescribing the legend drugs carisoprodol (Soma) and nalbuphine (Nubain).
Undeterred, Dr. Clausing hired two licensed physicians to staff his clinic on an occasional basis. He then continued to purchase these drugs, using the prescription drug authorization numbers of the two licensed physicians. Dr. Clausing then continued to supply Soma and Nubain as refills of what he claimed were valid prescriptions issued prior to the revocation of his license to practice.
Sheryl Reynaga is a former patient and former volunteer employee of Dr. Clausing. In July 1995, she reported to the King County police that Dr. Clausing was still distributing legend drugs despite his license suspension. Police enlisted her support for a sting operation. She made three controlled buys from Dr. Clausing while fitted with a recording device. Dr. Clausing delivered Nubain and Soma to her.
Based on this evidence, police executed search warrants on Dr. Clausing's clinic and home. They seized large quantities of Nubain and several bulk bottles of Soma tablets. The State charged Dr. Clausing with numerous violations of the drug act. He was tried to a jury in 1997. The jury was unable to reach a verdict on three counts of unlawful delivery of a legend drug and one count of possession with intent to deliver a legend drug, all contrary to former RCW 69.41.030. The State retried those counts before a jury in 1998. And the jury found Dr. Clausing guilty of all four counts. These guilty verdicts are the subject of this appeal.

TRIAL
Former RCW 69.41.030 provides in pertinent part: "It shall be unlawful for any person to sell, deliver, or possess any legend drug except upon the order or prescription of a physician under chapter 18.71 RCW, an osteopathic physician or an osteopathic physician and surgeon under chapter 18.57 RCW...." The statute contains the proviso that it does not apply to a practitioner acting within his or her license.
Dr. Clausing conceded that he delivered Nubain and Soma, and that these were legend drugs as defined by the statute. He also conceded that he was not licensed as a physician or pharmacist and was not, therefore, a "practitioner" as defined in former RCW 69.41.010(11) (1994). Report of Proceedings (RP) (Feb. 24, 1998) at 39, 44; RP (Feb. 26, 1998) at 85, 86-87.
*553 His defense was that Ms. Reynaga had a valid prescription. RP (Feb. 26, 1998) at 83, 122. He produced no evidence of a written prescription at trial. Nor could he state who issued the specific prescription here, or when. Id. at 87. Dr. Clausing testified, however, that his medical files had been seized by the State. And, although the State had granted him access to these files, Ms. Reynaga's most recent medical file had been lost. Id. at 15-16. Ms. Reynaga did not testify. Dr. Clausing insisted that he never delivered legend drugs without a prescription. Id. at 122-23.
Donald Williams is the executive director of the Washington State Board of Pharmacy. He testified, over Dr. Clausing's objection, that a prescription issued by a physician became invalid when the doctor's license was revoked. The court instructed the jury that the director's opinion was not to be taken as a legal opinion, but only from the practical perspective of a pharmacist. RP (Feb. 11, 1998 morning) at 15.
The court first instructed the jury that:
It is a crime for any person to deliver a legend drug except upon the order or prescription of a licensed physician or osteopathic physician except as authorized by law.
Clerk's Papers (CP) at 200 (Instruction No. 7) (emphasis added). This modifies the pattern instruction. The word "physician" is not qualified by "licensed" in the pattern instruction. 11 WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 55.03, at 693 (2d ed. 1994) (WPIC). But it accurately states the substance of former RCW 69.41.030.
If the defendant asserts that a prescription exists, WPIC 55.03 directs the court to add the following burden of proof instruction found in WPIC 55.06:
It is not unlawful to deliver a legend drug upon the order or prescription of a physician or osteopathic physician and surgeon.
The State has the burden of proving beyond a reasonable doubt that the defendant did not deliver a legend drug upon the order or prescription of a physician or osteopathic physician and surgeon. But the court again modified the instruction by importing into WPIC 55.06 language from the professional licensing regulations of chapter 18.64 RCW (Pharmacists) and instructed the jury that:
It is not unlawful to deliver a legend drug if the legend drug either: 1) is dispensed by a licensed practitioner upon the order or prescription of a licensed physician or osteopathic physician; or 2) is delivered by a practitioner acting within the scope of his or her license.
The State has the burden of proving beyond a reasonable doubt that the legend drugs in Counts I, II, and III were not dispensed by a licensed practitioner upon the order or prescription of a licensed physician and that they were not delivered by a practitioner acting within the scope of his or her license.
CP at 210 (Instruction No. 17) (emphasis added). A corresponding instruction was given for the possession count. CP at 218 (Instruction No. 25).
Dr. Clausing objected to Instruction No. 17 arguing it was confusing and should be omitted from the instructions entirely: "I just think it confuses everybody. It's confused you, it's confused us, it's confused the jury. We're not able to argue about what the real facts of the case are if [sic] whether the patient had a prescription." RP (Mar. 2, 1998) at 24. The court explained that the added language was necessary because the statute was "less than well written." Id. at 21-22.
The jury found Dr. Clausing guilty as charged.

DISCUSSION
Dr. Clausing contends that the trial court's burden of proof instruction misstated the requirements of the statute under which he was charged. Specifically, he points out that former RCW 69.41.030 does not make it a crime to deliver without a license to practice. The statute prohibits "any person" licensed or notfrom delivering without a prescription. Dr. Clausing maintains that the challenged instruction substitutes a new elementthat a legend drug must be "dispensed *554 by a licensed practitioner" or "delivered by a practitioner acting within the scope of his or her license "for the actual element of lack of a prescription. CP at 210 (emphasis added). This effectively eliminated Dr. Clausing's only defensethe existence of a valid prescriptionand relieved the State of the burden of establishing the "no prescription" element beyond a reasonable doubt.
STANDARD OF REVIEW
Jury instructions are sufficient if they are supported by substantial evidence, allow the parties to argue their theories of the case, and when read as a whole properly inform the jury of the applicable law. State v. Riley, 137 Wash.2d 904, 908 n. 1, 909, 976 P.2d 624 (1999). We review the adequacy of jury instructions de novo as a question of law. State v. Pirtle, 127 Wash.2d 628, 656, 904 P.2d 245 (1995). It is prejudicial error to submit an issue to the jury that is not warranted by the evidence. State v. Fernandez-Medina, 141 Wash.2d 448, 455, 6 P.3d 1150 (2000).
THE STATUTE
First, it is important to remember that we are not charged with passing on the social or moral propriety of Dr. Clausing's activities. Conduct may well be harmful, offensive, immoral, or just plain wrong. But whether it is also criminal is a judgment left to the legislature. In re Welfare of Colyer, 99 Wash.2d 114, 139, 660 P.2d 738 (1983). The legal question before us is a narrow onedid the court's instructions inform the jury of the elements of the crime of unlawful delivery of a legend drug as set out in former RCW 69.41.030 (delivery of a legend drug without a prescription).
Dr. Clausing conceded that he delivered a legend drug. He also conceded that he was not a practitioner. The only factual question before the jury was, therefore, whether Ms. Reynaga had a valid prescription for these drugs. The absence of a physician's prescription was the single essential element of the offense of unlawful delivery, which the State had to prove beyond a reasonable doubt. Dr. Clausing did not have to prove that Ms. Reynaga did have a prescription. In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) (prosecution must prove the essential elements of the crime and the nonexistence of any defense which by its terms asserts that one of those elements was not present).
THE INSTRUCTIONS
But the court's instructions fail to identify this essential factual dispute for the jury. Instead, the court required the jury to determine whether the legend drugs were dispensed by a licensed practitioner. The net effect was to require both a prescription and a license to practice as conditions for the lawful delivery of legend drugs. Former RCW 69.41.030 does not require this.
Instructional error is presumed to be prejudicial unless it affirmatively appears to be harmless. State v. Wanrow, 88 Wash.2d 221, 237, 559 P.2d 548 (1977).
The second prong of the court's instruction, that a legend drug can be lawfully delivered by "a practitioner acting within the scope of his or her license" is superfluous. CP at 210. Dr. Clausing conceded that he was not a practitioner.
He did testify that he never delivered legend drugs without a prescription. It was up to the jury to accept or reject that assertion. But, given the wording of the instruction, the jury may not have reached that question. Once the jury concluded he was not a practitioner, it could find Dr. Clausing guilty without further inquiry. The result was to relieve the State of the burden of proving an essential element of these crimes. And this requires reversal.
OPINION TESTIMONY ON QUESTION OF LAW
Dr. Clausing next complains that the court improperly allowed the executive director of the Board of Pharmacy to tell the jury that a physician's prescriptions were no longer valid after the revocation of the physician's license. This, he says, is a legal opinion. We agree. And, in fact, there are three distinct problems with the testimony.
*555 First, Mr. Williams' testimony was clearly a legal opinion. A pharmacist's opinion on the validity of a physician's prescriptions following a license suspension has relevance only as a question of law.
For an expert to testify to the jury on the law usurps the role of the trial judge. Ball v. Smith, 87 Wash.2d 717, 722-23, 556 P.2d 936 (1976). "Each courtroom comes equipped with a `legal expert,' called a judge, and it is his or her province alone to instruct the jury on the relevant legal standards." Burkhart v. Wash. Metro. Area Transit Auth., 112 F.3d 1207, 1213 (D.C.Cir.1997). A contrary rule would confuse the jury because "`each party would find an expert who would state the law in the light most favorable to its position.'" Harvey Brown, Eight Gates for Expert Witnesses, 36 HOUS. L.REV. 743, 771-72 (1999) (quoting Askanase v. Fatjo, 130 F.3d 657, 672-73 (5th Cir.1997)).
Washington Constitution article IV, section 16, provides that the court "shall declare the law." Legal questions are decided by the court, not the jury, for good reason. By arguing to the court, the lawyers have the opportunity to argue canons of construction; applicable law, including case precedent; and all the other traditional elements that make up legal argument. A judge trained in law then decides whether or not the proposition is legally correct. And he or she can then craft an instruction for the jury. To allow a lay person to answer a legal question puts the lawyers in the impossible position of making these legal arguments to a lay jury.
Second, as the Court of Appeals noted: "The State concedes that this opinion `does not appear to be explicitly supported in statutory law,' and indeed, there is no Washington authority for Williams' statement." State v. Clausing, 104 Wash.App. 75, 86, 15 P.3d 203 (2001).
Third, after overruling an objection to the testimony, the court told the jury that:
[T]he question should not elicit and it's not intended to elicitand the answers should not be considered by you as a legal opinionan opinion as to what the law is or what the law is that you would apply in this case.
It's being offered as an opinion from this witness from the perspective of a pharmacist or an employee of the Board of Pharmacy.
RP (Feb. 11, 1998 morning) at 15. But the testimony is a legal opinion, no matter what the court said, and an erroneous one at that. The evidence was, then, improperly admitted. And the court's cautionary instruction to the jury was not curative.
The significance of this legal opinion was highlighted by the prosecutor's jury argument: "The head of the Board of Pharmacy, the man who in this station is responsible for the regulations of these drugs says, "When you lose your license to practice medicine, your prescriptions are void.'" RP (Mar. 2, 1998) at 101. The court sustained Dr. Clausing's objection to the prosecutor's remark as a misstatement of the facts. But the opinion nonetheless supported the prosecutor's argument.
Dr. Clausing's defense was that he delivered legend drugs only upon a physician's prescriptionincluding prescriptions issued by him before his license was revoked. The legal validity of these prescriptions was, therefore, critical to his defense. The jury should, therefore, have received instruction on this point, rather than being asked to decide the question as a matter of fact.

CONCLUSION
The conviction is reversed.
ALEXANDER, C.J., SMITH, SANDERS, CHAMBERS, JJ., and KURTZ, J.P.T., concur.
OWENS, J. (dissenting).
Under Vernon Clausing's interpretation of the unlawful delivery statute, former RCW 69.41.030 (1994), anyone with access to a stash of legend drugs may lawfully hand those drugs over to anybody with a prescription. Presumably, then, any stock clerk at Rite Aid could pour pills into a pharmacy customer's outstretched hand (or dump a quantity into a friend's shopping bag) without committing an unlawful delivery of legend drugs. The majority swallows Clausing's *556 fishy interpretation hook, line, and sinker. To do so, it takes an entirely passive approach to reading former RCW 69.41.030. While it is one thing for a court to criticize the Legislature for inelegant drafting, it is quite another to forgo reading a statute in light of the statutory definitions set forth just two sections prior. Application of the statutory definitions to the terms of art in a statute is essential to discerning the plain meaning of the statute. Dep't of Ecology v. Campbell & Gwinn, L.L.C., 146 Wash.2d 1, 11, 43 P.3d 4 (2002) (concluding that plain meaning is derived "from all that the Legislature has said in the statute and related statutes which disclose legislative intent about the provision in question."). Because I conclude that the trial court looked intently at former RCW 69.41.030, interpreted its terms of art by applying the definitions in former RCW 69.41.010 (1994), and then properly instructed the jury on the meaning of unlawful delivery of legend drugs, I respectfully dissent.
A closer look at the genesis of Jury Instruction 17 is warranted. The starting point is former RCW 69.41.030:
It shall be unlawful for any person to sell, deliver, or possess any legend drug except upon the order or prescription of a physician under chapter 18.71 RCW, an osteopathic physician or an osteopathic physician and surgeon under chapter 18.57 RCW, ...: PROVIDED, HOWEVER, That the above provisions shall not apply to ... any practitioner acting within the scope of his or her license,....
Accordingly, the trial court instructed the jury that "[i]t is a crime for any person to deliver a legend drug except upon the order or prescription of a licensed physician or osteopathic physician except as authorized by law."[1] The court thus gave the following "to convict" instruction:
To convict the defendant, Vernon Clausing, of the crime of unlawful delivery of a legend drug as charged in Count I, each of the following elements of the crime must be proved beyond a reasonable doubt:
(1) That on or about the 27th day of July, 1995, Vernon Clausing unlawfully delivered a legend drug; and
(2) That the acts occurred in the State of Washington.
If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty as to Count I.
On the other hand, if, after weighing all the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty as to Count I.[[2]]
But plainly, this instruction, which tracks the pattern jury instruction does nothing to define
the crime of unlawful delivery. See 11 WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 55.04, at 694 (2d ed. 1994) (WPIC). Here, the first "element" of the crime of "unlawful delivery of a legend drug" is proof beyond a reasonable doubt that the defendant "unlawfully delivered a legend drug."[3]
To clarify the circular first element of the "to convict" instruction, the trial court turned to WPIC 55.06:
It is not unlawful to deliver a legend drug upon the order or prescription of a physician.
The State has the burden of proving beyond a reasonable doubt that the defendant *557 did not deliver a legend drug upon the order or prescription of a physician.
But this pattern instruction has the same limitation as the "to convict" instruction-it says nothing new or enlightening. The instruction merely transforms the statute's positive statement (already set forth in instruction 7) into a negative one and reiterates that the State has the burden of proof, a fact the court had made plain in instruction 6. See Clerk's Papers (CP) at 199. Nevertheless, Clausing's advisory attorney proposed WPIC 55.06 virtually verbatim, see CP at 163, and Clausing himself proposed only a slightly expanded version: "It is not unlawful for an unlicensed person to possess or deliver a legend drug upon an order or prescription from a licensed physician in the line of his legitimate employment." CP at 182.
Faced with pattern jury instructions saying little more than that an unlawful delivery requires proof of an unlawful delivery and that a lawful delivery is not an unlawful delivery, the trial court modified WPIC 55.06 to set forth for the jury just what constitutes a lawful delivery and what precisely the State must prove:
It is not unlawful to deliver a legend drug if the legend drug either: 1) is dispensed by a licensed practitioner upon the order or prescription of a licensed physician or osteopathic physician; or 2) is delivered by a practitioner acting within the scope of his or her license.
The State has the burden of proving beyond a reasonable doubt that the legend drugs in Counts I, II, and III were not dispensed by a licensed practitioner upon the order or prescription of a licensed physician and that they were not delivered by a practitioner acting within the scope of his or her license.
CP at 210 (Jury Instruction 17). Responding to Clausing's objection, the trial court emphasized the necessity of this instruction: "If I were to take [instruction 17] out altogether, there would [be] no guidance to the jury on the issue of what is lawful or unlawful,...." Report of Proceedings (RP) (Mar. 2, 1998) at 24.
This jury instruction adeptly synthesizes former RCW 69.41.030 and the definitions in section .010 of key terms used in section .030. The statutory definition of "legend drugs" is essential to understanding what constitutes an unlawful delivery of legend drugs under RCW 69.41.030: "`Legend drugs' means any drugs which are required by state law or regulation of the state board of pharmacy to be dispensed on prescription only or are restricted to use by practitioners only." Former RCW 69.41.010(10) (emphasis added). The trial judge thus observed that the statutory definition of "legend drugs" required that such drugs "either be dispensed on prescription or ... used by a practitioner in the scope of their license." RP (Mar. 2, 1998) at 16. The word "dispensed" is also a term of art with a statutory definition: "`Dispense' means the interpretation of a prescription or order for a legend drug and, pursuant to that prescription or order, the proper selection, measuring, compounding, labeling, or packaging necessary to prepare that prescription or order for delivery." Former RCW 69.41.010(4). The statute defines a "dispenser" as "a practitioner who dispenses" and, in turn, defines a "practitioner" as inter alia a licensed physician, a licensed osteopathic physician or surgeon, or a pharmacy licensed to dispense legend drugs. Former RCW 69.41.010(5), (11). Thus, the statutory definition of "legend drugs," read in the light of the definition of "dispense," establishes that legend drugs either must be prepared by a practitioner (that is, by a licensed physician or pharmacy) on prescription only or must be used by a licensed physician.
These requirements are reinforced in the statutory definition of "deliver": "`Deliver' or `delivery' means the actual, constructive, or attempted transfer from one person to another of a legend drug, whether or not there is an agency relationship." Id. at subsection (2) (emphasis added). Further insight into the meaning of "deliver" is afforded in the contrasting definition of "distribute": "`Distribute' means to deliver other than by administering or dispensing a legend drug." Id. at subsection (6) (emphasis added). That delivery of a legend drug is here equated with either "dispensing" or "administering" the legend drug reinforces *558 the definition of "legend drugs" as drugs that must be either dispensed by a practitioner upon a valid prescription or used by a practitioner.
In sum, former RCW 69.41.030, interpreted in accord with the relevant definitions in section .010, establishes that a licensed physician may permissibly use or administer legend drugs and that, where a physician instead writes the patient a prescription, another practitioner (that is, another licensed physician or pharmacy) must assume responsibility for dispensing that drugby interpreting the prescription and carrying out any necessary tasks of selecting, labeling, or packaging the drug for delivery. Former RCW 69.41.010(4). The trial court thus correctly instructed the jury that a legend drug is lawfully delivered if it "1) is dispensed by a licensed practitioner upon the order or prescription of a licensed physician or osteopathic physician; or 2) is delivered by a practitioner acting within the scope of his or her license." CP at 210 (Jury Instruction 17).
Clausing's initial criticism of Jury Instruction 17 betrays his entirely erroneous assumption that he was entitled to dispense legend drugs. He described the instruction as "a little garbled, because it isn't the physician who dispenses it. It is his employees, see?" RP (Mar. 2, 1998) at 21. Thus, in Clausing's account of the transaction, he was merely functioning as an employee handing the legend drugs to the patient, but this convenient view eliminates the crucial intermediate step between the presentation of the prescription and the ultimate act of transferring the legend drugs to the patient. Clausing plainly does not accept that legend drugs must be dispensed by a practitioner (that is, by a licensed physician or pharmacy) before any unlicensed employee of that practitioner may legitimately transfer the legend drugs to the patient. Clausing has to express that belief because the facts unequivocally establish that he took pills from his stock of "bootleg rum," as he called it, and turned them over in plastic sandwich baggies to Sheryl Reynaga, a former patient working as a police agent. Ex. 9, at 34; see also RP (Feb. 3, 1998) at 32, 37. The majority's extraordinary unwillingness to apply to former RCW 69.41.030 the statutory definitions of section .010 licenses Clausing's self-serving misperception that a legend drug need not be dispensed by a practitioner. The majority's acceptance of Clausing's simplistic, distorted interpretation of the statute compares poorly to the conscientious efforts of the trial judge. I agree with the Court of Appeals that the trial court properly instructed the jury on the unlawful delivery of legend drugs.
I also agree with the conclusion of the Court of Appeals that any error in the trial court's admission of expert opinion testimony under ER 401 was harmless. An evidentiary error requires reversal if it results in prejudicethat is, if it can be reasonably said that "the outcome of the trial would have been materially affected had the error not occurred." State v. Tharp, 96 Wash.2d 591, 599, 637 P.2d 961 (1981); see also State v. Bourgeois, 133 Wash.2d 389, 403, 945 P.2d 1120 (1997). The State called Donald Williams, the executive director of the Washington State Board of Pharmacy, and asked him whether a prescription written by a doctor whose license is revoked the following day would be a valid prescription. Clausing objected, the jury was excused, and the matter discussed; the trial court then instructed the jury that Williams's "answers should not be considered by you as a legal opinionan opinion as to what the law is or what the law is that you would apply in this case." RP (Feb. 11, 1998) at 15; see State v. Hanna, 123 Wash.2d 704, 711, 871 P.2d 135 (1994) (stating that "[j]uries are presumed to heed the court's instructions."). Williams then expressed his belief that preexisting prescriptions of a doctor whose license is revoked are no longer valid and may not be refilled.
I agree with the Court of Appeals that the opinion testimony served no relevant purpose "because Clausing never introduced any prescriptions or medical records to corroborate his claim of preexisting authority" for the prescriptions. State v. Clausing, 104 Wash.App. 75, 87, 15 P.3d 203 (2001). More importantly, the presentation of this irrelevant testimony did not prejudice Clausing. The validity of Sheryl Reynaga's allegedly preexisting prescriptions was irrelevant to *559 the outcome of the trial because, as discussed above, Clausing's delivery of the legend drugs was unlawful on other grounds: he was not delivering the drugs as a licensed physician, nor was he delivering drugs that had been previously dispensed by a licensed physician or pharmacy. In light of the curative instruction and Clausing's failure to show prejudice, this court should affirm the conclusion of the Court of Appeals that any error here was harmless.
Similarly, Clausing's claim of prosecutorial misconduct is unavailing. To prevail on a claim of prosecutorial misconduct, a defendant bears the burden of showing that the prosecutor's comments were improper and that there is a substantial likelihood that the comments affected the jury's decision. State v. Reed, 102 Wash.2d 140, 145, 684 P.2d 699 (1984); State v. Russell, 125 Wash.2d 24, 85, 882 P.2d 747 (1994). In closing argument, the prosecutor told the jury that "[t]he head of the Board of Pharmacy, the man who in this station is responsible for the regulations of these drugs[,] says, `When you lose your license to practice medicine, your prescriptions are void.'" RP (Mar. 2, 1998) at 101. The trial court sustained Clausing's objection that the prosecutor's remark misstated the facts. However, the court overruled a subsequent objection when the prosecutor went on to say that "[t]he fact remains there was no valid prescription in this case." Id. at 101-02. As to this second statement, the Court of Appeals correctly observed that the prosecutor had fairly characterized the facts, given that no prescriptions were placed in evidence. Clausing, 104 Wash.App. at 87, 15 P.3d 203. Regarding the prosecutor's first comment, Clausing cannot show that there was a substantial likelihood that the comment affected the jury's decision; the trial court sustained Clausing's objection, and for the same reasons that the expert opinion testimony was not prejudicial, the allusion to that testimony in closing argument did not constitute prejudicial prosecutorial misconduct.
In sum, I would affirm the decision of the Court of Appeals on all points. The Court of Appeals correctly concluded that the jury instructions had not misstated the law regarding the unlawful delivery of a legend drug, that any error in the admission of opinion testimony had been harmless, and that Clausing had not shown prejudicial prosecutorial misconduct.
JOHNSON and MADSEN, JJ., concur.
NOTES
[*] Judge Dennis J. Sweeney is serving as a judge pro tempore of the Supreme Court pursuant to Const. art. IV, § 2(a).
[1] A legend drug is one that is required by state law or regulation of the Washington State Board of Pharmacy to be dispensed on prescription only or is restricted to use by practitioners only. Former RCW 69.41.010(9) (1994).
[2] RCW 18.130.180 provides for withdrawal of the license to practice for unprofessional conduct including, among other things, moral turpitude, professional incompetence, and criminal conviction.
[1] Clerk's Papers (CP) at 200 (Jury Instruction 7). This instruction inserts the word "licensed" into the pattern jury instruction, an addition comporting with the statute's citation of the licensing statutes. See 11 WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 55.03, at 693 (2d ed. 1994). Clausing's proposed instruction likewise inserts the word "licensed." CP at 181.
[2] CP at 207 (Jury Instruction 14). For counts II and III, the court gave the same instruction, changing only the count number and the applicable date. Id. at 208-09 (Jury Instructions 15-16).
[3] Clausing's advisory attorney submitted this instruction, but Clausing subsequently proposed that the first element be expanded with the phrase "to a person without a prescription or order from a licensed physician"; he then made the handwritten alteration "to a person for whom their [sic] was no prescription on record." CP at 183.