FILED
COURT OF APPEALS
DIVISION II

2015 APR -7 AM 9: 22

STATE OF WASHINGTON

BY_____
                DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 45391-6-II |
| Appellant, | |
| v. | |
| MARCUS R. LANGFORD, | UNPUBLISHED OPINION |
| Respondent. | |

MAXA, P.J. — Marcus Langford appeals his conviction and sentence for first degree felony murder. The conviction arose from an attempted robbery in which Langford's friend J.J. Stimson shot and killed a man that he and Langford had encountered. The trial court allowed a witness to testify that Stimson told her in Langford's presence that he and Langford had intended to rob a man. The trial court ruled that the testimony regarding Stimson's statement was conditionally admissible as an adoptive admission under ER 801(d)(2)(ii) because there was sufficient evidence that Langford had adopted Stimson's statement by remaining silent while and after Stimson made the statement.

Langford argues that (1) the trial court erred by giving an erroneous jury instruction regarding the jury's consideration of Stimson's statement, and (2) Langford's attorney provided ineffective assistance of counsel by helping to draft and not objecting to the erroneous jury instruction.

We do not directly address whether the jury instruction was erroneous because Langford invited any error and did not raise the issue in the trial court. However, we hold that defense counsel provided ineffective assistance by helping to draft and failing to object to the erroneous instruction that clearly misstated the law. Accordingly, we reverse Langford's conviction and remand for a new trial.[1]

## FACTS

### *Facts of the Shooting Incident*

Langford and Stimson were walking back from a party in November 2012 when they came upon David Watson on the ground near his pickup truck at a gas station convenience store. The store's surveillance camera captured the encounter. Watson exchanged words with Stimson and Langford and eventually got into the truck. Stimson stood at the driver's door, apparently conversing with Watson. Langford stood beside Stimson. Stimson suddenly reached into the truck and shot Watson with a firearm. Stimson and Langford ran from the scene, and Watson drove away. Shortly thereafter, Watson died from a gunshot wound to the chest.

The State charged Langford as an accomplice with first degree felony murder, with attempted robbery as the predicate crime. The State also alleged a sentencing enhancement

---

[1] Langford also argues that (1) the trial court erred in admitting testimony about Stimson's statement that he and Langford had intended to rob a man, (2) his attorney provided ineffective assistance of counsel by failing to initially object to that testimony, (3) his attorney provided ineffective assistance by failing to raise a statutory affirmative defense to felony murder, (4) there was insufficient evidence to support a firearm sentencing enhancement and the trial court made instructional errors regarding that enhancement, and (5) the trial court erred when it directed the jury to continue deliberating after the presiding juror informed the trial court that the jury was hopelessly deadlocked. Because we reverse on other grounds, we do not address these arguments.

because Stimson had been armed with a firearm during the crime. Stimson was charged as the principal with first degree felony murder and originally was Langford's codefendant, but Stimson pleaded guilty to a lesser charge before the case went to trial.

*Testimony About Stimson's Statement*

At trial, Stimson's former girlfriend, Tajanae Williams, testified that Stimson and Langford visited her apartment shortly after the crime. She stated that she was sitting in between Stimson and Langford on her bed when Stimson "said that him and Marcus were going to rob this guy and take his truck, but they didn't." Report of Proceedings (RP) at 481. The trial court asked her to repeat the statement, and she reiterated, "JJ said they are going to rob this guy for his truck, but they didn't." RP at 481. She further testified that when Stimson made the statement, Langford just looked at her with a "blank stare" and said nothing. RP at 482. Langford then asked Williams to help him download music onto her computer.

Langford later moved to strike Williams' testimony about Stimson's statement on grounds that it was a statement by a nontestifying codefendant. The trial court denied the motion, making a threshold determination that sufficient evidence supported a finding that Langford had adopted Stimson's incriminating statement by remaining silent. The trial court explained that Stimson's statement was admitted only as Langford's adoptive admission and was subject to a conditional relevance finding by the jury that Langford in fact adopted the statement.

*Jury Instructions*

Langford proposed jury instructions intended to limit the jury's consideration of Williams' testimony about Stimson's statement. One of the proposed instructions was based on WPIC 6.05, the pattern instruction to be given when a codefendant has testified at trial in a

3

manner that incriminates the defendant. 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 6.05, at 241 (3d ed. 2008) (WPIC). The trial court was uncomfortable with Langford's instruction as proposed, so Langford and the State both participated in drafting a modified instruction based on the WPIC 6.05 instruction. Both parties ultimately agreed to the modifications and chose not to object to the final language of the instruction. The trial court gave the jury the modified instruction.

*Verdict and Sentence*

The jury found Langford guilty of first degree felony murder and found that a firearm was used in the commission of the crime within the meaning of the sentencing enhancement statute. The trial court sentenced Langford to 340 months confinement, which included a mandatory 60 months for the firearm enhancement. Langford appeals his conviction and sentence.

ANALYSIS

A.     ADOPTIVE ADMISSION – GENERAL PRINCIPLES

Stimson's statement to Williams – that Langford and Stimson intended to rob a man – was an out-of-court statement offered for its truth. Ordinarily, an out-of-court statement offered for its truth is inadmissible hearsay. ER 802, 801(c). However, ER 801(d)(2)(ii) provides that an out of court statement is not hearsay when a party "has manifested an adoption or belief in its truth." In this situation, the adopted statement is treated as the adopting party's own words. *State v. Cotten*, 75 Wn. App. 669, 689, 879 P.2d 971 (1994). The original statement is not hearsay because it is not admitted to prove the truth of the matter asserted. *State v. Neslund*, 50

4

Wn. App. 531, 555, 557, 749 P.2d 725 (1988). Instead, the statement is admitted to lay the foundation for showing the party's failure to deny it. *Id.* at 555.

A party may manifest adoption of another's statement expressly, or by implication of his words or actions. *Id.* at 550. Further, Division One of our court in *Neslund* held that a party may implicitly adopt a statement by silence if the party (1) heard the incriminating statement, (2) was mentally and physically able to respond, and (3) reasonably would have responded under the circumstances had there been no intention to acquiesce. *Id.* at 550-51; *see also Cotten*, 75 Wn. App. at 689 (adopting the *Neslund* approach). Nevertheless, the court recognized the "inherently equivocal nature of silence" and warned that "such evidence must be received with caution." *Neslund*, 50 Wn. App. at 551.[2]

The court in *Neslund* also held that whether a party has adopted a statement for purposes of ER 801(d)(2)(ii) is "a matter of conditional relevance to be determined ultimately by the jury." *Id.* at 551-52. To implement this approach, the court identified a two-step procedure for admitting statements a party adopted by silence. First, the trial court makes a preliminary determination that "there are sufficient foundational facts from which the jury reasonably could conclude that the defendant actually heard, understood, and acquiesced in the statement" and the circumstances are such that an innocent defendant normally would be induced to respond. *Id.* at 551. Second, if the trial court makes this determination and the statement is admitted into evidence, the jury must determine as a matter of fact whether the party heard, understood, and

---

[2] Langford asks us to overrule *Neslund* and *Cotten* and hold that a party cannot adopt an out-of-court statement by silence under ER 801(d)(2)(ii). Because we reverse on other grounds, we do not address the validity of the adoption by silence rule.

acquiesced in the statement by choosing not to respond. *Id.* at 551-52. Only if the jury finds that the defendant heard, understood, and acquiesced in the statement can it consider the statement for its truth during its deliberations.[3] *Id.*

Here, the trial court expressly found that the State had established a sufficient foundation for the jury to reasonably conclude that Langford adopted Stimson's statement, and therefore ruled that Williams' testimony regarding the statement was conditionally admissible. The issue we address is whether the trial court properly instructed the jury regarding consideration of this conditionally relevant evidence.

B.   ADOPTIVE ADMISSION INSTRUCTION

1.   Trial Court Error

Langford argues that the trial court erred by giving an erroneous instruction regarding the jury's consideration of Stimson's statement. However, Langford's counsel proposed the instruction the trial court later adopted after modifications, participated in drafting the modified instruction, and did not object to giving that modified instruction to the jury. Therefore, Langford both invited any error and failed to raise this argument in the trial court.

We do not consider any error that is invited by the appealing party. *See State v. Hyder*, 159 Wn. App. 234, 250, 244 P.3d 454 (2011). We also generally do not consider arguments raised for the first time on appeal. RAP 2.5(a). Therefore, we do not directly address Langford's jury instruction argument.

---

[3] Langford asks us to reject the *Neslund* approach and hold that the trial court must determine the admissibility of alleged adoptive admissions rather than allowing the jury to determine admissibility under conditional relevance procedures. Because we reverse on other grounds, we do not address the validity of *Neslund*'s conditional relevance approach.

2.   Ineffective Assistance of Counsel

Langford alternatively argues that his attorney provided ineffective assistance of counsel because he helped draft and failed to object to an erroneous jury instruction regarding the jury's consideration of Stimson's statement. We hold that defense counsel's representation was deficient and prejudiced Langford, and therefore that Langford was denied his right to effective assistance of counsel.

a.   Legal Principles

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee a criminal defendant's right to effective assistance of counsel. *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011). Where a criminal defendant has been denied effective assistance of counsel, we will reverse any resulting conviction and remand for a new trial. *Id.*

We review claims of ineffective assistance of counsel de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). To prevail on such a claim, the defendant must show that (1) defense counsel's representation was deficient, and (2) the deficient representation prejudiced the defendant. *Grier*, 171 Wn.2d at 32-33. Representation is deficient if, after considering all the circumstances, it falls below an objective standard of reasonableness. *Id.* at 33. Prejudice exists if there is a reasonable probability that except for counsel's errors, the result of the proceeding would have differed. *Id.* at 34. Reasonable probability in this context means a probability sufficient to undermine confidence of the outcome. *Id.*

b.   Deficient Performance

Langford argues that his counsel's performance fell below an objective standard of reasonableness because his counsel helped draft, and ultimately agreed to, a jury instruction that misstated the applicable law. We agree.

A jury instruction must properly inform the jury of the applicable law. *State v. Mills*, 154 Wn.2d 1, 7, 109 P.3d 415 (2005). An instruction that misstates the law is erroneous. *State v. Clausing*, 147 Wn.2d 620, 628, 56 P.3d 550 (2002). An attorney has a duty to research the applicable law and should reasonably appreciate an error of law in a jury instruction. *See State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009).

Under *Neslund*, the jury is responsible for determining whether a party has adopted another person's out-of-court statement under ER 801(d)(2)(ii). 50 Wn. App. at 551-52. The jury must decide whether the party adopted the statement by determining whether the party actually heard, understood, and acquiesced in the statement. *Id.* at 551. This procedure necessarily means that if the jury decides that a party did *not* adopt a statement, it cannot consider that statement for the truth of the matter asserted therein.

Here, the trial court worked with both parties to draft an instruction addressing Langford's alleged adoption of Stimson's statement. The language of the instruction originated with Langford's proposed instruction based on WPIC 6.05, the pattern instruction to be given

when a codefendant has testified at trial in a manner that incriminates the defendant.[4] To adapt the proposed instruction to the situation presented in this case, the trial court simply changed references to an accomplice's "testimony" to "alleged statements" and added language instructing the jury to determine whether the statements were made and whether the defendant knowingly acquiesced in them. RP at 651. The resulting instruction (instruction 9) stated:

> Alleged statements of an accomplice should be subjected to careful examination in the light of other evidence in the case, and should be acted upon with great caution. You should not find the defendant guilty upon such alleged statements alone unless after carefully considering the statements, you are satisfied beyond a reasonable doubt of its truth.
>
> It is for the jury to determine if such statements were made and whether those statements, in light of all the circumstances, were heard, understood and acquiesced by the defendant.

Clerk's Papers (CP) at 60.

However, instruction 9 did not explain the *Neslund* procedure to the jury. The instruction's second paragraph stated the adoptive admission elements. But the instruction did not inform the jury that it could not consider Stimson's statement for any purpose if it found that Langford had *not* heard, understood, or acquiesced in the statement. Instead, the instruction stated that the jury could find Langford guilty based on Stimson's statement alone if the jury was "satisfied beyond a reasonable doubt of its truth" without finding that Langford had adopted the statement. CP at 60.

---

[4] The proposed instruction, identical to WPIC 6.05, stated: "Testimony of an accomplice, given on behalf of the State should be subjected to careful examination in the light of other evidence in the case, and should be acted upon with great caution. You should not find the defendant guilty upon such testimony alone unless, after carefully considering the testimony, you are satisfied beyond a reasonable doubt of its truth." Clerk's Papers at 31.

By giving this instruction, the trial court told the jury that it could find Langford guilty based on Stimson's statement alone if the jury found that Stimson's statement was true. The language implicitly characterized Langford's knowing acquiescence as a component in that truth determination, not as a threshold requirement for considering the statement as evidence. The instruction should have informed the jury that it could not consider the truth of Stimson's statement *unless* it found that Langford adopted that statement. As a result, the instruction clearly misstated the law.

Langford's counsel proposed the language that misstated the law and failed to object to the erroneous instruction. As a result, we hold that Langford's counsel's performance was deficient.

c. Prejudice

Langford argues that the erroneous jury instruction prejudiced him because it allowed the jury to consider Stimson's statement without finding that Langford adopted the statement. We agree.

The evidence that Langford adopted Stimson's statement was not particularly strong. Although Langford was sitting on the bed with Williams and Stimson, he did not participate in their conversation. And Langford just stared blankly when Stimson made the statement and then acted as if no statement had been made by talking about downloading music. This evidence would have allowed the jury to find that Langford did not hear, understand, or acquiesce in Stimson's statement. Based on the minimal evidence that Langford adopted Stimson's statement, there is a reasonable probability that the jury would not have considered Stimson's statement if instructed properly.

10

Stimson's statement was the State's primary evidence showing that Langford was aware of or participated in a plan to rob the victim. Therefore, if the jury had not considered Stimson's statement, there is a reasonable probability that it would have reached a different verdict. Accordingly, we hold that Langford was prejudiced by his attorney's deficient performance in helping draft and failing to object to the erroneous jury instruction.

We reverse Langford's conviction and sentence and remand for a new trial.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, P.J.

We concur:

LEE, J.

MELNICK, J.

11