180 P.3d 885 (2008)
STATE of Washington, Respondent,
v.
Howard Gale ANDERSON, aka Earl W. Dodge Jr., Appellant.
No. 25859-9-III.
Court of Appeals of Washington, Division 3.
April 17, 2008.
David N. Gasch, Gasch Law Office, Spokane, WA, for Appellant.
Cheryl Taylor, Stevens County Prosecutor's Office  DPA, Colville, WA, for Respondent.
SWEENEY, J.
¶ 1 This appeal follows a conviction for second degree assault while armed with a firearm. It raises a couple of questions. The first is whether the State produced sufficient evidence to support the court's instruction that an aggressor may not avail himself of the defense of self-defense. We conclude that the State produced sufficient evidence to support the court's aggressor instruction. The second question is whether the court had authority to impose a firearm enhancement because the statute does not set out a procedure for finding that the defendant was armed with a firearm. Another division of this court has already decided that it is not necessary to lay out a specific statutory procedure. State v. Truong V. Nguyen, 134 Wash.App. 863, 142 P.3d 1117 (2006). We agree. And we therefore affirm the conviction and sentence here.

FACTS
¶ 2 On the evening of August 5, 2006, Vivian Stoudt, Tia Richmond (Ms. Stoudt's daughter), and Sean Moran (Ms. Richmond's boyfriend) drove a car to the remote cabin property where they lived with Howard Anderson (Ms. Stoudt's boyfriend). They found Ms. Richmond's kitten lying dead in the front yard as they approached the property. Mr. Anderson said that he let the kitten out of the fifth-wheel behind the cabin *886 where Ms. Richmond had left it earlier that day and a dog mauled it.
¶ 3 Ms. Richmond and Ms. Stoudt argued with Mr. Anderson about the incident throughout the evening. Ms. Richmond eventually went to the fifth-wheel to go to sleep. She heard more argument from inside the cabin. So she got out of bed and looked in the cabin window. She saw Mr. Anderson yelling at Ms. Stoudt. Ms. Stoudt was sitting in a chair. Mr. Anderson stood over Ms. Stoudt and leaned into her face.
¶ 4 Ms. Richmond walked into the cabin with a steel bar in her hand. She told Mr. Anderson to get away from her mother. And she told Ms. Stoudt to leave the cabin with her. Mr. Anderson then pointed a shotgun at Ms. Richmond and Ms. Stoudt. Ms. Richmond then yelled for Mr. Moran. And Ms. Stoudt grabbed the shotgun and tried to point its barrel toward the floor. Ms. Richmond then pushed Mr. Anderson into the cabin's front doorframe with the iron bar.
¶ 5 Mr. Anderson, Ms. Richmond, and Ms. Stoudt all fell onto the front porch as they fought over the bar. Ms. Richmond and Ms. Stoudt were pinned under Mr. Anderson. Mr. Anderson began choking Ms. Richmond with one hand and slamming Ms. Stoudt's head onto the porch with his other hand.
¶ 6 Mr. Moran then appeared and grabbed Mr. Anderson under the arms and tried three or four times, unsuccessfully, to pull him off the women. He then stabbed Mr. Anderson in the back with a hunting knife. Mr. Moran then ran away from Mr. Anderson and the cabin. Ms. Stoudt and Ms. Richmond saw Mr. Anderson reach for the shotgun. Ms. Stoudt saw him aim and shoot the shotgun. Mr. Moran heard the shot and then heard branches breaking over his head. He thought Mr. Anderson was shooting at him.
¶ 7 The State charged Mr. Anderson with two counts of second degree assault, each while armed with a firearm; two counts of fourth degree assault; and one count of second degree unlawful possession of a firearm.
¶ 8 The State proposed an aggressor instruction (no self-defense if the defendant is the aggressor) before the defense presented its case. Mr. Anderson objected. But Mr. Anderson did not renew the objection after he rested. And the court instructed the jury that if Mr. Anderson was the aggressor he was not entitled to the defense of self-defense. The court also submitted a special verdict instruction on the firearm enhancement[1] and a special verdict to the jury. Mr. Anderson did not object to the instruction or the verdict form.
¶ 9 The jury found Mr. Anderson guilty of one count of second degree assault. And the jurors found that he was armed with a firearm when he committed the assault. The jury also found Mr. Anderson guilty of one count of second degree unlawful possession of a firearm and two counts of fourth degree assault.
¶ 10 The court sentenced Mr. Anderson accordingly. The court added a 36-month firearm enhancement to the sentence.

DISCUSSION
¶ 11 Mr. Anderson argues on appeal that the court erred (1) when it submitted the aggressor instruction to the jury, and (2) when it added a firearm enhancement to his sentence.
*887 Aggressor Instruction
¶ 12 Mr. Anderson contends that the State failed to produce sufficient evidence to justify an aggressor instruction. State v. Heath, 35 Wash.App. 269, 271, 666 P.2d 922 (1983).
¶ 13 Whether the State produced sufficient evidence to justify the aggressor instruction is a question of law and our review is therefore de novo. State v. J-R Distribs., Inc., 82 Wash.2d 584, 590, 512 P.2d 1049 (1973). The State need only produce some evidence that Mr. Anderson was the aggressor to meet its burden of production. State v. Riley, 137 Wash.2d 904, 909-10, 976 P.2d 624 (1999); see State v. Hughes, 106 Wash.2d 176, 191, 721 P.2d 902 (1986).
¶ 14 A court properly submits an aggressor instruction where (1) the jury can reasonably determine from the evidence that the defendant provoked the fight; (2) the evidence conflicts as to whether the defendant's conduct provoked the fight; or (3) the evidence shows that the defendant made the first move by drawing a weapon. Riley, 137 Wash.2d at 909-10, 976 P.2d 624. A court errs when it submits an aggressor instruction and the evidence shows that the defendant used words alone to provoke the fight. Id. at 910-11, 976 P.2d 624.
¶ 15 Mr. Anderson argues that Ms. Richmond provoked the fight between him and Ms. Richmond and Ms. Stoudt when she entered his cabin with an iron bar in her hand. But the State showed that Ms. Richmond entered the cabin holding the bar after she heard Mr. Anderson yelling and saw him leaning over Ms. Stoudt with his hands on the arms of the chair she was sitting in. Mr. Anderson's conduct here consisted of more than words and that is sufficient to support the aggressor instruction. Id. at 909-10, 976 P.2d 624.
¶ 16 Mr. Anderson also argues that Mr. Moran provoked him to fire his shotgun. Mr. Moran stabbed Mr. Anderson after he tried and failed to pull Mr. Anderson off the women. And Mr. Moran then ran from Mr. Anderson. Mr. Anderson fired his shotgun at Mr. Moran as he ran. Again, this is sufficient to support the aggressor instruction. And, moreover, shooting Mr. Moran as he ran away probably does not support Mr. Anderson's theory of self-defense. State v. LeFaber, 128 Wash.2d 896, 899-900, 913 P.2d 369 (1996) (self-defense requires a reasonable belief of imminent harm).
¶ 17 The trial court properly instructed the jury that Mr. Anderson was not entitled to assert self-defense if he was the aggressor.
Firearm Enhancement
¶ 18 Mr. Anderson next argues that the court erred when it added a 36-month firearm enhancement to his sentence for second degree assault. He notes that the legislature did not set out a procedure for submitting to the jury the question of whether a defendant was armed with a firearm when he committed the assault. RCW 9.94A.533(3). He then argues from this that a court has no authority to impose a firearm enhancement without such authorized procedure.
¶ 19 Division One of this court has already resolved this question in Nguyen. The Nguyen court acknowledged that the firearm enhancement statute does not set forth a process for asking a jury whether a defendant was armed with a firearm while committing the underlying crime. Nguyen, 134 Wash. App. at 870, 142 P.3d 1117. But it held that "[t]o the extent express authority is required, the deadly weapon special verdict statute supplies it." Id. The court reasoned that "[a] firearm is a type of deadly weapon, expressly included in the statutory definition. The procedural statute did not need amendment just because the legislature created differing penalties for different deadly weapons." Id.
¶ 20 Mr. Anderson, like the defendant in Nguyen, relies upon State v. Recuenco[2] and State v. Hughes[3] for the proposition that the *888 court cannot imply or create a procedure for the imposition of a firearm enhancement. He is mistaken. See Nguyen, 134 Wash.App. at 870-71, 142 P.3d 1117. The Recuenco court's reference to this proposition was merely dicta. See Recuenco, 154 Wash.2d at 164, 110 P.3d 188. And the Hughes holding was limited to deciding an appropriate remedy on remand. Hughes, 154 Wash.2d at 149, 110 P.3d 192. The Hughes court did not decide the issue of whether juries may be given special verdict forms to determine aggravating factors at trial. Id.
¶ 21 We agree with the holding and the reasoning in Nguyen. Nguyen, 134 Wash. App. at 870-71, 142 P.3d 1117. The enhancement statutes authorize the firearm enhancement here.
¶ 22 We affirm Mr. Anderson's conviction and sentence.
WE CONCUR: KORSMO, J., and THOMPSON, J. Pro Tem.
NOTES
[1] Instruction 7 stated:

For purposes of a special verdict, the State must prove beyond a reasonable doubt that the defendant was armed with a firearm at the time of the commission of the crime in Count 2.
A person is armed with a firearm if, at the time of the commission of the crime, the firearm is easily accessible and readily available for offensive or defensive use. The State must prove beyond a reasonable doubt that there was a connection between the firearm and the defendant. The State must also prove beyond a reasonable doubt that there was a connection between the firearm and the crime. In determining whether this connection existed, you should consider the nature of the crime, the type of firearm, and the circumstances under which the firearm was found.
A "firearm" is a weapon or device from which a projectile may be fired by an explosive such as gunpowder.
Clerk's Papers at 32.
[2] State v. Recuenco, 154 Wash.2d 156, 164, 110 P.3d 188 (2005), rev'd on other grounds, 548 U.S. 212, 126 S.Ct. 2546, 165 L.Ed.2d 466 (2006).
[3] State v. Hughes, 154 Wash.2d 118, 149-50, 110 P.3d 192 (2005), overruled in part by Washington v. Recuenco, 548 U.S. 212, 126 S.Ct. 2546, 165 L.Ed.2d 466 (2006).