# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | NO. 72767-2-I |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| JEROME WARD MOODY, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: March 9, 2015 |
| | ) | |

LAU, J. — Jerome Moody appeals his jury trial conviction for one count of custodial assault of a corrections officer. He contends that (1) there was insufficient evidence to support a first aggressor instruction, (2) a first aggressor instruction is unnecessary in a case of custodial assault, and (3) his offender score was not proven by a preponderance of the evidence. In a statement of additional grounds, Moody asserts that the trial judge was biased because he represented him as an attorney in a previous criminal matter. Finding no reversible error, we affirm his conviction. But because the State failed to properly establish Moody's offender score by a preponderance of the evidence, we remand for resentencing based on a correct offender score calculation.

## FACTS

Although the facts are disputed, the evidence shows the following:

Jerome Moody was an inmate at the Cowlitz County Jail. On March 3, 2013, Moody was in solitary confinement on 24-hour watch for making suicidal threats. To prevent any harm, corrections officers periodically monitored his status by looking through his cell door window. Moody covered the window with his smock.

He refused Officer Ryan Munger's directive to remove the smock. He shouted, "I'm going to fight every single one of you," and "Fuck you. I'll fight all of you all. Come on in and get me." Report of Proceedings (July 17, 2013) (RP) at 74–75, 144. He stood at the cell door with his fists in the air "shadow boxing."

Officer Munger ordered Moody several times to "cuff up" by placing his hands though a small trap door about waist high. Moody responded, "I'm not doing a single thing you're—I'm going to fight you, so come on in. Let's fight. We're fighting." Three other officers arrived to help Officer Munger. Officer Munger threatened to "taser" Moody if he failed to comply.

The officers entered the cell. Officer Munger yelled for Moody to lie prone on the ground. He refused. Officer Munger pointed his stun gun's red sight dot towards Moody's chest. Moody backed up and sat down on his bunk. He continued to swear at the officers, telling them he was going to "kick [their] ass." RP at 77. Munger holstered his stun gun when Moody no longer posed an immediate threat.

Moody remained confrontational and resisted the officers' efforts to escort him to a restraint chair. He tensed up and pulled his arms away. The officers leaned him forward, but he continued to resist. Officers grabbed Moody's hair to restrain him because he was naked after removing his smock to cover the cell window. Every time the officers tried to place Moody's arm in one of the chair straps, he resisted. He moved

his feet around, tensed up, and tried to out-muscle the officers. Officers testified that when an inmate uses physical force to resist, they are trained and authorized to escalate to gain control of the situation.[1]

For example, officers are trained to use greater force such as striking the soft part of an inmate's back if inmate's resistance escalates. Moody slipped his arm out of Officer John Lacy's grip and held it under his chest to avoid the chair restraints. He continued to resist, so Officer Lacy struck Moody two or three times in the soft part of his back. .

As Officer Lacy tried to regain control of Moody's arm, Moody bit Officer Lacy's wrist. Officer Lacy struck Moody a few more times in the back. Eventually the officers secured Moody in the chair. Moody said he was glad he bit Officer Lacy and wished he had taken a "chunk" out of him. Moody admitted to Deputy Scott Baker that he bit Officer Lacy because he thought one of the officers was choking him. The officers denied this assertion at trial.

The State charged Moody by information with one count of custodial assault involving Officer Lacy. The video recording of the entire confrontation was played for the jury.[2] Moody did not testify at trial.

Over Moody's objection, the trial court gave the jury a first aggressor instruction:

> No person may, by any intentional act reasonably likely to provoke a belligerent response, create a necessity for acting in self-defense and thereupon use, or attempt to use force upon another person. Therefore, if you find beyond a reasonable doubt that the defendant was the aggressor, and that the

---

[1] Officers are trained to use a technique described as "the continuum of force."

[2] The video, exhibit 2, was not included in our record on appeal.

defendant's acts and conduct provoked or commenced the fight, then self-defense is not available as a defense.

Instruction 11; 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS:

CRIMINAL 16.04, at 241 (3d ed. 2008) (WPIC).

The court also gave the jury a self-defense instruction, requested by Moody:

It is a defense to a charge of custodial assault that force used was lawful as defined in this instruction.
A person may use force upon or toward a person known to be a correctional officer only when that person is in actual and imminent danger of serious injury from an officer's use of excessive force. The person may employ such force and means as a reasonably prudent person would use under the same or similar circumstances.
The State has the burden of proving beyond a reasonable doubt that the force used by the defendant was not lawful. If you find that the State has not proved the absence of this defense beyond a reasonable doubt, it will be your duty to return a verdict of not guilty.

Instruction 10; 11 WPIC 17.02.01, at 253 (modified).[3]

The jury convicted Moody as charged. He appeals.

## ANALYSIS

### First Aggressor Instruction 11

Moody contends his due process rights were violated when the trial court instructed the jury on first aggressor. First, he claims there was insufficient evidence to support this instruction.[4]

---

[3] This instruction relates to resisting detention. It was modified to apply to restraint by a corrections officer.

[4] Moody argues, "The evidence did not support an aggressor instruction." Br. of Appellant at 7. This assertion is unclear. We assume that Moody challenges the sufficiency of the evidence.

Whether the State produced sufficient evidence to justify the aggressor instruction is a question of law we review de novo. State v. Anderson, 144 Wn. App. 85, 89, 180 P.3d 885 (2008). "[T]he right of self-defense cannot be successfully invoked by an aggressor or one who provokes an altercation . . . ." State v. Riley, 137 Wn.2d 904, 909, 976 P.2d 624 (1999). Although not favored, an aggressor instruction is proper if there is credible evidence "from which a jury can reasonably determine that the defendant provoked the need to act in self-defense . . . ." Riley, 137 Wn.2d at 909. We must view the evidence in the light most favorable to the party requesting the instruction—here, the State. State v. Wingate, 155 Wn.2d 817, 823 n.1, 122 P.3d 908 (2005).

The provoking act must be intentional but cannot be the actual assault. State v. Kidd, 57 Wn. App. 95, 100, 786 P.2d 847 (1990). But words alone do not justify finding the speaker is the aggressor. Riley, 137 Wn.2d at 910-11. "'A court properly submits an aggressor instruction where (1) the jury can reasonably determine from the evidence that the defendant provoked the fight, (2) the evidence conflicts as to whether the defendant's conduct provoked the fight, or (3) the evidence shows that the defendant made the first move by drawing a weapon.'" State v. Stark, 158 Wn. App. 952, 959, 244 P.3d 433 (2010) (quoting State v. Anderson, 144 Wn. App. 85, 89, 180 P.3d 885 (2008). Our Supreme Court has approved substantially similar wording to the instruction given by the trial court in this case. Wingate, 155 Wn.2d at 821.

Moody argues there is no evidence that he acted affirmatively to provoke the conflict. We disagree. As summarized above, Moody's words and acts provide sufficient evidence to support the first aggressor instruction. Officers were monitoring

Moody to ensure his safety while on suicide watch. He refused the officers' instructions to remove the smock. He physically resisted, threatened to fight the officers, refused to cooperate with their repeated commands, and struck a fighting pose, and he was verbally belligerent. Moody alleged the officers choked him. Because the jury could reasonably determine from the evidence that Moody provoked the fight and the evidence conflicts as to whether Moody provoked the fight, the trial court properly gave the jury an aggressor instruction.

### Self-Defense Instruction 10

Moody argues, "The first aggressor instruction is never warranted in cases involving custodial assault, because the instructions on self-defense already require the jury to find that officers responded to a provocation with excessive force." Br. of Appellant at 9. He also asserts, "Washington courts have never condoned applying the aggressor doctrine in a custodial assault case like this one. The policy considerations underlying the aggressor doctrine do not pertain when a person defends him/herself from excessive force by corrections or police officers." Br. of Appellant at 9-10. Moody cites no authority for these arguments. An appellate court need not consider issues unsupported by citation to authority. State v. Lord, 117 Wn.2d 829, 853, 822 P.2d 177 (1991). "'Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none.'" State v. Logan, 102 Wn. App. 907, 911 n.1, 10 P.3d 504 (2000) (quoting DeHeer v. Seattle Post-Intelligencer, 60 Wn.2d 122, 126, 372 P.2d 193 (1962)).

The first aggressor instruction is based on the policy that if a defendant provokes the use of force, the responding victim's use of force is lawful. Because the victim's force is lawful, the defendant is not entitled to respond with force. Riley, 137 Wn.2d at 910–11.

The rule governing self-defense against a correctional officer is different from the common law rules governing self-defense. A person may only use self-defense against a correctional officer when he is in actual imminent danger of serious bodily injury or death.[5] State v. Bradley, 141 Wn.2d 731, 743, 10 P.3d 358 (2000). Self-defense is only appropriate when law enforcement actually uses excessive force. State v. Westlund, 13 Wn. App. 460, 466, 536 P.2d 20 (1975). Here, the trial court granted Moody's request to instruct the jury on self-defense.

Jury instructions are sufficient "if they are supported by substantial evidence, allow the parties to argue their theories of the case, and when read as a whole properly inform the jury of the applicable law." State v. Clausing, 147 Wn.2d 620, 626, 56 P.3d 550 (2002).

---

[5] One justification for this different standard are the dynamics of the prison setting:

"Prisons, by definition, are places of involuntary confinement of persons who have demonstrated a proclivity for anti-social criminal, and often violent, conduct. Inmates have necessarily shown a lapse in ability to control and conform their behavior to the legitimate standards of society by the normal impulses of self-restraint; they have shown an inability to regulate their conduct in a way that reflects either a respect for law or an appreciation of the rights of others."

Bradley, 141 Wn.2d at 742 (quoting Hudson v. Palmer, 468 U.S. 517, 526, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984).

Here, instructions 10 and 11 are supported by sufficient evidence, correctly stated the law, and allowed both the State and Moody to argue their theories of the case.[6]

We conclude the trial court properly gave the jury the first aggressor instruction together with the self-defense instruction.

Prosecutorial Misconduct

Moody argues that the prosecutor committed misconduct when it argued in closing remarks, "And let's face it, it's jail. People do bad things in jail. Bad people are in jail, and they know how to take bad things into jail . . . . " Reply Br. of Appellant at 5. The prosecutor argued,

> Had he simply complied with the request by Officer Munger to assist him in watching his behavior so that he didn't go forward with whatever it is he had said he was going to do to get into suicide watch, we would not be here. Officer Munger would have had eyes on him; Officer Munger would have been able to see what he was doing in that cell.
> And let's face it, it's jail. People do bad things in jail. Bad people are in jail, and they know how to take bad things into jail, and you heard that conversation, you heard that evidence with Officer Munger. He said they have found things that he has no idea how they got in there, but they got in there.
> And regardless of having a smock and a blanket, and those are the sole items that he had, those are the sole items that Officer Munger was aware of. The Defendant could very well have had anything in there, and he had no idea about that. That is why he needed the Defendant to keep the smock away from that window . . . .

RP at 333 (emphasis added).

---

[6] Moody also relies on Stark, 158 Wn. App. 952, arguing the first aggressor instruction lowered the State's burden of proof. Stark does not control. Unlike the facts here, in Stark, there was no evidence that the defendant was the first aggressor. Stark, 158 Wn. App. at 960

Moody asserts these remarks "encouraged the jury to convict Mr. Moody based on passion and prejudice . . . ." Reply Br. of Appellant at 5.

To prevail on a claim of prosecutorial misconduct, a defendant must show that the conduct was both improper and prejudicial in the context of the entire record and circumstances at trial. State v. Thompson, 169 Wn. App. 436, 495, 290 P.3d 996 (2012). Courts will find prejudice only if there is a substantial likelihood that the misconduct affected the jury's verdict. Thompson, 169 Wn. App. at 495. The defendant bears the burden of showing both that the conduct was improper and that it caused prejudice. State v. Hughes, 118 Wn. App. 713, 727, 77 P.3d 681 (2003).

Moody did not object to any of the prosecutor's closing remarks. A defendant may raise the issue of prosecutorial misconduct for the first time on appeal only if the remark was so flagrant and ill intentioned the prejudice could not have been addressed with a curative instruction. State v. Russell, 125 Wn.2d 24, 86, 882 P.2d 747 (1994).

Here, the prosecutor's comments were not flagrant and ill intentioned. He never argued or implied that the jury should convict Moody because he was a bad person. It is evident from the context that the prosecutor was merely explaining the reasons why officers need to see inside an inmate's jail cell. Defense counsel's decision not to object or request a curative instruction "'strongly suggests to a court that the argument or event in question did not appear critically prejudicial to an appellant in the context of the trial.'" State v. McKenzie, 157 Wn.2d 44, 53 n.2, 134 P.3d 221 (2006) (quoting State v. Swan, 114 Wn.2d 613, 661, 790 P.2d 610 (1990)).

Moreover, the trial court instructed the jury that (1) the only evidence it was to consider was testimony from witnesses and the admitted exhibits; (2) the jurors were

the sole judges of the credibility of each witness; (3) the lawyers' remarks were not evidence; (4) the jurors must disregard any remark, statement or argument not supported by the evidence; and (5) the jurors must decide the case based on the facts proved and the law and not on sympathy, prejudice, or personal preference. Instruction 1. We presume the jury follows the court's instructions. State v. Johnson, 124 Wn.2d 57, 77, 873 P.2d 514 (1994). Moody fails to establish flagrant and ill-intentioned closing remarks, or that a curative instruction would have been ineffective. Accordingly, the issue is waived. But even if no waiver occurred here, there is no likelihood the remarks affected the verdict.

Offender Score

Moody alleges that his offender score was improperly calculated. The sentencing court is required to calculate the defendant's offender score based on the number of adult and juvenile felony convictions existing before the date of sentencing. RCW 9.94A.525(1). Due process allows the court to rely on what has been admitted in a plea agreement or admitted, acknowledged, or proved in a trial or at the time of sentencing. State v. Hunley, 175 Wn.2d 901, 909, 287 P.3d 584 (2012). The State bears the burden of proving the defendant's criminal history by a preponderance of the evidence. Hunley, 175 Wn.2d at 910. Bare assertions unsupported by evidence do not meet this standard. Hunley, 175 Wn.2d at 910. The preponderance of the evidence standard is not overly difficult to meet, but the State must offer some evidence supporting the alleged criminal history. Hunley, 175 Wn.2d at 910.

Moody did not object to his offender score below. But an unpreserved sentencing error may be raised for the first time on appeal because sentencing

implicates fundamental issues of due process if it is based on false information, lacks a minimum indicia of reliability, or is unsupported in the record. State v. Jones, 182 Wn.2d 1, 6, 338 P.3d 278 (2014).

At sentencing, the State submitted to the court a written summary of Moody's prior felony convictions. The summary included the name of the crime, the date of the sentence, the cause number, and whether the crime was committed as a juvenile or adult. The State submitted no additional evidence of the prior convictions. The State properly concedes, "It would be pointless to argue that this evidence is much more than a bare assertion, unsupported by the evidence." Br. of Resp't at 17.

Moody is correct that the State failed to prove his offender score by a preponderance of the evidence. He argues that the proper remedy is remand for resentencing with an offender score of 0. We disagree. Where a defendant fails to object to an offender score at sentencing, remand so that the parties may present additional evidence of the defendant's criminal history is the appropriate remedy. RCW 9.94A.530(2); Jones, 182 Wn.2d at 10–11; State v. Cobos, 182 Wn.2d 12, 14–15, 338 P.3d 283 (2014). We therefore remand to the trial court to allow the parties an opportunity to present additional evidence of Moody's criminal history.

Statement of Additional Grounds

Moody asserts in his statement of additional grounds, "The Judge in this case was my attorney of defense on previous case so I feel he was bias in my case" and "he had no business hearing this case." But prior representation of a criminal defendant by a judge when they were acting as an attorney does not require disqualification without a

specific showing of bias.  State v. Dominguez, 81 Wn. App. 325, 329–30, 914 P.2d 141 (1996).  Moody makes no specific showing of bias.  This claim fails.

## CONCLUSION

For the reasons discussed above, we affirm Moody's conviction for custodial assault.  But because the State failed to prove Moody's offender score by a preponderance of the evidence, we remand for resentencing based on a correct offender score calculation.

WE CONCUR: