IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 35549-7-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| RICARDO OCHOA DIMAS, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, J. — Ricardo Ochoa Dimas appeals his convictions for second degree murder, first degree assault, and unlawful possession of a firearm. We reject all of Mr. Ochoa Dimas's challenges save two: (1) Mr. Ochoa Dimas's convictions for counts 2 and 5 must be vacated based on double jeopardy principles and (2) Mr. Ochoa Dimas is entitled to relief from payment of the $100 deoxyribonucleic acid (DNA) collection fee based on recent changes to Washington's legal financial obligations statutes.

FACTS

On the night of January 22, 2016, Mr. Ochoa Dimas fired a single shot from a handgun, killing Anna Hargett and injuring another woman, Leticia Diaz. Mr. Ochoa Dimas had accompanied some friends to Ms. Hargett's residence in order to protest the quality of heroin received in a recent drug transaction. The interaction between

Mr. Ochoa Dimas's companions and the residents of Ms. Hargett's home was heated.

The incident was recorded by a surveillance camera, albeit without sound.

The surveillance video shows Mr. Ochoa Dimas and four other individuals (three

women and one man) arriving at Ms. Hargett's residence.  One of the women knocked on

the front door as Mr. Ochoa Dimas stood watch.  Mr. Ochoa Dimas's back was directly

against a wall, located to the left of the front door.  Because the wall ran perpendicular to

the door, the left side of Mr. Ochoa Dimas's body was directly opposite the front of the

doorway.  At that point in time, Mr. Ochoa Dimas did not have anything in his hands.

He was, however, fidgeting with something near his right-hand front pocket.

Ms. Diaz answered the door and stepped outside.  She closed the door behind

her and began arguing with Mr. Ochoa Dimas and his companions.  After several

minutes, the door opened and Ms. Hargett and her niece displaced Ms. Diaz at the

front door.  At that point, Mr. Ochoa Dimas removed a firearm from the area of his

right pants pocket and held it by his side, pointing it toward the ground.

Once Ms. Diaz was displaced, the verbal confrontation continued with

Ms. Hargett's niece standing in front of Ms. Hargett in the home's open doorway.

According to Ms. Hargett's niece, she and Ms. Hargett told Mr. Ochoa Dimas and

his companions to leave "several times."  3 Report of Proceedings (RP) (Aug. 29, 2017)

2

at 211. Ms. Hargett's niece did not mention whether, at that point, she noticed Mr. Ochoa Dimas holding the gun.

The video then depicts the following events over the course of less than five seconds: Ms. Hargett moved around her niece as Mr. Ochoa Dimas stepped away from the wall and turned his body to face the front door. Mr. Ochoa Dimas was still holding the gun in his right hand, pointing it toward the ground. Mr. Ochoa Dimas and Ms. Hargett then exchanged words. At that point, the video shows Mr. Ochoa Dimas's gun in full view, within the possible eyesight of Ms. Hargett. Ms. Hargett then pulled an ax from behind her body and lunged at Mr. Ochoa Dimas. Mr. Ochoa Dimas put up his left arm in an apparent attempt to shield himself and took several steps backward. Ms. Hargett then started to lower the ax. As she did so, Mr. Ochoa Dimas fired a shot at Ms. Hargett.

The bullet fired by Mr. Ochoa Dimas went through Ms. Hargett's chest and then traveled to hit Ms. Diaz in the neck. Mr. Ochoa Dimas and his companions then fled the scene. Police arrived and Ms. Hargett and Ms. Diaz were taken to the hospital. Ms. Diaz recovered from her wounds; Ms. Hargett did not.

The State charged Mr. Ochoa Dimas with five felony counts: (1) second degree murder, (2) second degree felony murder, (3) first degree assault, (4) first degree

3

unlawful possession of a firearm, and (5) second degree unlawful possession of a firearm.

Mr. Ochoa Dimas exercised his right to a jury trial as to counts 1, 2 and 3. He agreed to a

bench trial on counts 4 and 5.

During the jury trial, Mr. Ochoa Dimas asserted self-defense. He testified on his

own behalf and claimed he shot Ms. Hargett in self-defense after she stepped toward him

with the ax. Mr. Ochoa Dimas denied being asked to leave prior to being threatened with

the ax. He also claimed his gun remained hidden until the moment of the shooting.

Based on the evidence admitted at trial, the trial court provided the jury a full

panoply of self-defense instructions, including instructions regarding no duty to retreat

(Instruction 16) and an initial aggressor instruction (Instruction 18).

The jury found Mr. Ochoa Dimas guilty of all pending charges. The trial court

then found Mr. Ochoa Dimas guilty of the two firearms charges. Mr. Ochoa Dimas

received a total sentence of 576 months' imprisonment. He appeals.

## ANALYSIS

*Initial aggressor jury instruction*

Mr. Ochoa Dimas claims the facts at trial did not justify a first aggressor

instruction. We disagree.

A first aggressor instruction may be issued where "(1) the jury can reasonably determine from the evidence that the defendant provoked the fight, (2) the evidence conflicts as to whether the defendant's conduct provoked the fight, or (3) the evidence shows that the defendant made the first move by drawing a weapon." *State v. Anderson*, 144 Wn. App. 85, 89, 180 P.3d 885 (2008). Here, the video evidence shows Mr. Ochoa Dimas drew his gun and positioned himself squarely in front of Ms. Hargett's door prior to being threatened with an ax. Given the context—a heated confrontation over drug money and refusal to leave after repeated requests—the mere act of pulling out a firearm and holding it in a low-ready position was an act of provocation, likely to elicit a belligerent response. The initial aggressor instruction was appropriate.

*Sufficiency of the evidence*

In addition to his instructional challenge, Mr. Ochoa Dimas claims the State's evidence was insufficient to overcome his claim of self-defense. When reviewing a sufficiency challenge, we assess the facts in the light most favorable to the State. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). As previously noted, the facts at trial suggested Mr. Ochoa Dimas escalated a verbal dispute into a violent confrontation by drawing a firearm and refusing repeated requests to leave. Because the law of self-defense does not apply to an individual who provokes an act of violence,

5

*State v. Wingate*, 155 Wn.2d 817, 822, 122 P.3d 908 (2005), the State provided sufficient proof to justify Mr. Ochoa Dimas's convictions.

*Prosecutorial misconduct*

Mr. Ochoa Dimas argues the prosecutor engaged in misconduct by making two misstatements of law during summation. Neither claim merits relief from conviction.

Mr. Ochoa Dimas's first complaint is that the prosecutor improperly shifted the burden of proof by arguing as follows:

> When you're looking through your jury instructions, you're going to see if this was necessary force. Even if you don't believe that he was the primary aggressor in this case, he still needs to prove that he was using the amount of force that was necessary to protect himself.

4 RP (Aug. 30, 2017) at 397.

While this statement was improper, it does not warrant reversal because it was adequately addressed by the trial judge. Immediately after the prosecutor's statement, defense counsel objected, the prosecutor apologized, and the trial court issued a curative instruction, explaining that the prosecutor had misstated the law and that "[t]he burden of proof is on the state, including the burden to prove the act was not lawful." *Id*. at 397-98. We presume that juries follow the court's instructions. *State v. Grisby*, 97 Wn.2d 493, 499, 647 P.2d 6 (1982). There are no facts in the record sufficient to rebut this presumption.

Second, Mr. Ochoa Dimas claims the prosecutor committed misconduct by repeatedly arguing Mr. Ochoa Dimas had a duty to retreat from Ms. Hargett's residence. This complaint rests on a flawed legal premise. The State properly argued Mr. Ochoa Dimas had a duty to retreat for two distinct reasons. First, the no duty to retreat standard applies only to individuals whose presence is lawful. *State v. Studd*, 137 Wn.2d 533, 549, 973 P.2d 1049 (1999); *State v. Allery*, 101 Wn.2d 591, 598, 682 P.2d 312 (1984). At the time of the shooting, Mr. Ochoa Dimas had no right of continued presence because his limited license as a visitor to the front door area of Ms. Hargett's home had been revoked. *See In re Pers. Restraint of Harvey*, 3 Wn. App. 2d 204, 216-17, 415 P.3d 253 (2018). Second, the right to stand one's ground does not apply to an initial aggressor. *Id.* at 220-21. Once Mr. Ochoa Dimas drew his firearm in a manner likely to provoke an aggressive response, he lost his right to continued presence. Rather than proceeding to act in a violent manner, he had a duty to retreat. *Id*. at 220. The prosecutor appropriately argued this point to the jury.

## *Double jeopardy*

As the parties agree, double jeopardy[1] protects Mr. Ochoa Dimas from being convicted of two counts of second degree murder and two counts of unlawful possession

---

[1] U.S. CONST. amend. V; WASH. CONST. art. I, § 9.

of a firearm. *See State v. Womac*, 160 Wn.2d 643, 656, 160 P.3d 40 (2007). This matter

is therefore remanded with instructions to vacate the convictions for counts 2 and 5.[2]

*Legal financial obligations*

Citing *State v. Ramirez*, 191 Wn.2d 732, 426 P.3d 714 (2018), Mr. Ochoa

Dimas has filed a supplemental brief, requesting we strike discretionary costs and

the $100 DNA collection fee from his judgment and sentence. *Ramirez* was decided

after Mr. Ochoa Dimas filed his opening brief. The decision held that the 2018

amendments[3] to Washington's legal financial obligations scheme apply prospectively

to cases on direct review at the time of enactment. Relevant here, the 2018 amendments

prohibit imposition of filing fees and costs on defendants who are indigent, as defined

by RCW 10.101.010(3)(a)-(c), at the time of sentencing. RCW 10.01.160(3); RCW

36.18.020(2)(h). In addition, the amendments prohibit the State from collecting more

than one $100 DNA collection fee. RCW 43.43.7541.

The record before the court indicates Mr. Ochoa Dimas is entitled to relief

under *Ramirez*. Mr. Ochoa Dimas proffers that his extensive felony criminal history

---

[2] It is unclear whether the trial court entered judgment on both firearm counts
(counts 4 and 5) or just first degree unlawful possession of a firearm (count 4). Given
this confusion, correction on remand is appropriate.

[3] LAWS OF 2018, ch. 269.

demonstrates he has previously paid a $100 DNA collection fee. We accept this representation and agree the current fee should be struck on remand unless the State produces evidence that the DNA fee has not previously been collected.

Mr. Ochoa Dimas also claims the court should strike a $200 criminal filing fee and $250 jury demand fee because those two fees are costs that, under current law, cannot be assessed against indigent defendants. Had the trial court actually imposed a $200 criminal filing fee and $250 jury demand fee, we would agree with Mr. Ochoa Dimas's position. However, the two aforementioned fees were already struck by the trial judge at the original sentencing hearing. We cannot provide further relief.

## STATEMENT OF ADDITIONAL GROUNDS FOR REVIEW

Mr. Ochoa Dimas has filed a statement of additional grounds for review (SAG) under RAP 10.10, alleging numerous errors in his convictions. Our review of Mr. Ochoa Dimas's SAG is limited to issues that are clearly defined, not repetitive of existing briefing, and adequately supported by the existing appellate record. RAP 10.10(c); *State v. Alvarado*, 164 Wn.2d 556, 569, 192 P.3d 345 (2008); *State v. Calvin*, 176 Wn. App. 1, 26, 316 P.3d 496 (2013).

The majority of Mr. Ochoa Dimas's SAG arguments refer to facts outside the existing record and therefore are not eligible for review on direct appeal. These include

claims that: (1) Ms. Hargett was not a lawful tenant and therefore had no authority to order Mr. Ochoa Dimas to leave her doorway, (2) Mr. Ochoa Dimas was denied access to legal resources during a critical stage in his case when he did not have counsel, (3) the trial court sealed juror records prior to the close of voir dire, (4) the prosecutor substituted evidence and failed to disclose exculpatory evidence, and (5) defense counsel provided ineffective assistance by failing to call witnesses, to consult with Mr. Ochoa Dimas about whether to seek a lesser included offense instruction, and to timely disclose a plea offer.

Two claims remain. Both fail on the merits.

First, Mr. Ochoa Dimas argues the trial court's instructions provided conflicting standards of self-defense. We disagree. The only instructions discussed with specificity in Mr. Ochoa Dimas's SAG are numbers 18 (the initial aggressor instruction) and 15 (a person acting in self-defense may act on appearances).[4] These instructions are not inconsistent. As written, neither undermines the standard that a defendant may rely on reasonable appearances when acting in self-defense.

Second, Mr. Ochoa Dimas claims his counsel engaged in improper trial strategy by failing to pursue a lesser included offense. We disagree. The decision to forgo a lesser included offense is a strategic matter that "ultimately rests with defense counsel."

---

[4] Mr. Ochoa Dimas erroneously refers to this instruction as number 20.

No. 35549-7-III
*State v. Ochoa Dimas*

*State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011). The mere fact that counsel's all-or-nothing trial strategy was unsuccessful does not support an ineffective assistance of counsel claim. *Id.* at 43.

## CONCLUSION

This matter is remanded with instructions to strike counts 2 and 5 from Mr. Ochoa Dimas's judgment of conviction. The trial court is also instructed to strike Mr. Ochoa Dimas's $100 DNA collection fee unless the State produces evidence that a DNA fee has not previously been collected. In all other respects, Mr. Ochoa Dimas's judgment of conviction is affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Pennell, J.

WE CONCUR:

_____        _____
Lawrence-Berrey, C.J.            Korsmo, J.

11