# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 54910-7-II |
| Respondents, | |
| v. | |
| BRYAN MICHAEL OWENS | UNPUBLISHED OPINION |
| Appellant. | |

LEE, C.J. — Bryan M. Owens appeals his conviction for first degree manslaughter. Owens argues that the trial court erroneously instructed the jury on self-defense. Owens also argues that the trial court abused its discretion by excluding Owens' expert's testimony. In a Statement of Additional Grounds (SAG),[1] Owens raises several additional issues.

We hold that the trial court did not err. Accordingly, we affirm Owens' conviction.

## FACTS

On September 3, 2019, Owens approached Mearl Benedict, who was panhandling outside a fast food restaurant. Owens yelled at and then pushed Benedict. Corey Meyer then approached Owens and asked why he was talking to Benedict. Meyer and Owens began arguing, which then became physical. During the altercation, Owens shot and killed Meyer. The State charged Owens

---

[1] A defendant may file a statement of additional grounds "to identify and discuss those matters related to the decision under review that the defendant believes have not been adequately addressed" on direct appeal by their counsel. RAP 10.10(a).

with second degree murder while armed with a firearm or, in the alternative, first degree manslaughter while armed with a firearm.

A.   EXPERT TESTIMONY

Prior to trial, Owens indicated that he planned to present expert testimony from Gregory Gilbertson regarding use of force.  Gilbertson was an expert on use of force by police.  Owens presented a report from Gilbertson detailing Gilbertson's opinions on Owens' use of force.  Gilbertson stated that he was asked by Owens to offer an opinion as to whether Owens acted in "lawful self-defense."  Clerk's Papers (CP) at 34.  Gilbertson then stated that it was his expert opinion that "Bryan Owens employed a reasonable, necessary, and lawful force in self-defense."  CP at 44.

The State moved to exclude Gilbertson's testimony.  The State argued that Gilbertson's testimony would provide an improper opinion that Owens was not guilty because Gilbertson was offering an opinion that Owens' use of force was lawful.  Owens argued that opinion testimony "is not excluded merely because it embraces an ultimate issue to be decided by the trier of fact."  Suppl. CP at 243.

The trial court granted the State's motion and excluded Gilbertson's expert testimony.  The trial court stated, "[T]his type of expert testimony would unduly trespass on the province of the jury and the ultimate question before them in this case."  1 Verbatim Report of Proceedings (VRP) (Mar. 9, 2020) at 23.

B.   JURY TRIAL

Owens' case proceeded to a jury trial with the following facts relevant to this appeal presented to the jury.

Benedict was panhandling in front of a fast food restaurant when Owens approached him. Owens told Benedict he was not welcome there, "started cussing [Benedict] out," and pushed Benedict in the chest. 2 VRP (Mar. 11, 2020) at 632.

Byron Peterson saw Owens and Benedict arguing and walked over to them. Peterson asked Owens and Benedict what was going on. Then Meyer approached Owens in defense of Benedict and aggressively asked Owens why he was talking to Benedict. After Meyer approached, Benedict went into the fast food restaurant to get away from the altercation.

Owens and Meyer began arguing, and Owens accused Meyer of being an alcoholic, saying "you guys are alcoholics." 2 VRP (Mar. 12, 2020) at 945. Meyer then blew in Owens' and Peterson's faces, and said that he had not been drinking and that he was not an alcoholic. Owens then said, "[M]ost homeless people are molesters, child molesters." 2 VRP (Mar. 12, 2020) at 946. Meyer and Owens were face-to-face and some of Meyer's "spittle" landed on Owens' face as they argued. 2 VRP (Mar. 12, 2020) at 947. As they continued to argue, "it just looked like a bunch more spit came out of [Meyer's] mouth, hit [Owens] in the face." 2 VRP (Mar. 12, 2020) at 947. At that point, Owens said, "[N]obody spits in my face, disrespects me," then hit Meyer and they both fell to the ground. 2 VRP (Mar. 12, 2020) at 947.

While on the ground, Owens held Meyer's head to his chest and hit Meyer on the side of the head. Meyer attempted to hit Owens as well. After 10-15 seconds, Peterson pulled Meyer away from Owens.

Peterson noticed that Meyer was bleeding on the side of his head, but Owens did not appear to have any injuries. Peterson testified that, at this point, there was nothing preventing either person from walking away. However, Owens and Meyer kept arguing and yelling at one another.

3

Meyer then began to approach Owens while still yelling, and Owens pushed him away. At that point, Owens pulled out his gun in the holster and told Meyer, "[I'm] not f[***]ing around." 2 VRP (Mar. 12, 2020) at 956. Meyer, with his hands up, responded, "[R]eally? You're gonna pull out a f[***]ing gun?" 2 VRP (Mar. 12, 2020) at 956. Owens then pulled the gun out of its holster and shot Meyer in the chest. Meyer fell to the ground. Owens took a step forward and shot again. After the incident, Peterson talked to Owens. Owens told Peterson, "[N]obody spits in my effing face, you know, disrespects me like that." 2 VRP (Mar. 12, 2020) at 962. The only injury Peterson saw on Owens was a small puncture on his thumb.

Owens testified on his own behalf at trial. His testimony differed somewhat from the version of events as testified to above by other witnesses at trial.

According to Owens, on September 3, 2019, Owens noticed a man, Benedict, with a sign outside of a fast food restaurant. Owens asked Benedict a number of questions, and Benedict responded, "[W]ho the F are you asking me these questions?" 3 VRP (Mar. 18, 2020) at 1462. Another man walked over and told Benedict that he was not welcome.[2] Owens parroted what that person said. Peterson then walked up to Owens and Benedict. Owens testified that he never physically touched Benedict during their conversation.

After Peterson walked up, Meyer approached Owens "very aggressively" and got in Owens' face. 3 VRP (Mar. 18, 2020) at 1477. Owens stated that Meyer spit on him three different times. Owens pushed Meyer away from him after he spit on him. Meyer knocked Owens on the

---

[2] The other man was not identified at trial and did not testify.

ground, straddled Owens, and started hitting him. Peterson pulled Meyer off of Owens. However, Meyer kept trying to come after Owens.

Owens was carrying a concealed weapon at the time of the altercation, which became "dislodged," but was still on his person, when Owens and Meyer were on the ground. 3 VRP (Mar. 18, 2020) at 1485. Owens was afraid that his gun might fall out of the holster and end up in someone else's hands. Owens pushed Meyer back, then grabbed the holster and the gun, and told Meyer, "'I've got a f[***]ing gun, stop.'" 3 VRP (Mar. 18, 2020) at 1488. Owens testified that he told Meyer he had a gun because he wanted the fighting to stop. Owens didn't walk away at this point because he believed Meyer would try to attack him.

According to Owens, Meyer then said, "F your gun" and "lunged" at Owens. 3 VRP (Mar. 18, 2020) at 1490. "[T]here was probably, I don't know, a few-minute reaction time and stuff. [Meyer] had closed the distance, and I fired the first shot." 3 VRP (Mar. 18, 2020) at 1491. Owens stated that he was not consciously aware that he was taking his gun out of the holster. Owens fired his gun a second time because Meyer was still coming towards him. Owens did not recall firing the gun the second time.

C.      JURY INSTRUCTIONS

At the close of the presentation of evidence, the trial court conferenced with the parties regarding the proposed jury instructions. Owens requested a jury instruction on self-defense, which the trial court granted. The self-defense instruction stated:

> It is a defense to a charge of murder and manslaughter that the homicide was justifiable as defined in this instruction.
> Homicide is justifiable when committed in the lawful defense of the slayer when:

> 1) the slayer reasonably believed that the person slain intended to inflict death or great personal injury;
> 2) the slayer reasonably believed that there was imminent danger of such harm being accomplished; and
> 3) the slayer employed such force and means as a reasonably prudent person would use under the same or similar conditions as they reasonably appeared to the slayer, taking into consideration all the facts and circumstances as they appeared to him, at the time of the incident.
> The State has the burden of proving beyond a reasonable doubt that the homicide was not justifiable. If you find that the State has not proved the absence of this defense beyond a reasonable doubt, it will be your duty to return a verdict of not guilty.

CP at 173.

In response, the State proposed a first aggressor jury instruction, which stated:

> No person may, by any intentional act reasonably likely to provoke a belligerent response, create a necessity for acting in self-defense and thereupon kill another person. Therefore, if you find beyond a reasonable doubt that the defendant was the aggressor, and that the defendant's acts and conduct provoked or commenced the fight, then self-defense is not available as a defense.

CP at 177. Owens argued that there was no credible evidence to show that he was the first aggressor. However, the trial court determined that it would give the first aggressor instruction stating, "I believe there is conflicting but viable evidence that would permit the jury to make such a finding in this case." 4 VRP (Mar. 19, 2020) at 1648.

Owens then argued to include an instruction on the revival theory of self-defense, which stated:

> As a general rule, one who is the aggressor or who provokes an altercation in which another is killed cannot invoke the right of self-defense to justify or excuse the homicide. However, the right of self-defense is revived as to the aggressor or the provoker if that person in good faith withdraws from the combat at such time and in such a manner as to clearly apprise the other person that he or she was desisting or intended to desist from further aggressive action.

6

CP at 160.. The trial court ruled that it would not be giving an instruction on the revival theory of self-defense because the self-defense jury instruction allowed Owens to argue his theory of the case without the need for additional instruction.

The trial court also instructed the jury on first degree manslaughter as a lesser included offense of the second degree murder charge. Owens did not propose an instruction for second degree manslaughter as a lesser included offense.

D. JURY DELIBERATIONS

During deliberations, the jury asked:

Do the "events" represent one event or perhaps 2 events, 1st event—Mr. Owens & Mearl Benedict & second event being Mr. Owens contact & Corey Meyers? Can the court clarify this? Ref to instruction 13.

CP at 162. The trial court responded:

Consistent with the instructions as a whole, you are the fact finders in this case and, pursuant to Instruction No 13, you may determine what constitutes an "act."

CP at 162. Owens did not object to the court's response to the jury question.

The jury found Owens guilty of first degree manslaughter while armed with a firearm. The trial court sentenced Owens to a standard range sentence of 162 months of confinement. CP 230.

Owens appeals.

ANALYSIS

A. JURY INSTRUCTIONS

Owens argues that the trial court erred in giving its jury instructions relating to self-defense. We disagree.

No. 54910-7-II

1.      Legal Principles

Whether there was sufficient evidence to justify a jury instruction is a question of law that we review de novo. *State v. Clausing*, 147 Wn.2d 620, 626-27, 56 P.3d 550 (2002); *State v. Anderson*, 144 Wn. App. 85, 89, 180 P.3d 885 (2008) (holding that whether there was sufficient evidence to justify the first aggressor instruction is reviewed de novo). "Jury instructions are sufficient if they are supported by substantial evidence, allow the parties to argue their theories of the case, and when read as a whole properly inform the jury of the applicable law." *Clausing*, 147 Wn.2d at 626. Jury instructions are reviewed on "a case-by-case inquiry." *State v. Grott*, 195 Wn.2d 256, 271, 458 P.3d 750 (2020). We view the supporting evidence in the light most favorable to the party requesting the instruction. *Id.* at 270.

2.      First Aggressor Jury Instruction

Owens argues that the trial court erred in giving the first aggressor instruction because it was not supported by the evidence.

A first aggressor instruction is appropriate where there is conflicting evidence as to whether the defendant's conduct precipitated a fight. *State v. Riley*, 137 Wn.2d 904, 910, 976 P.2d 624 (1999). The standard is met where the jury could determine through credible evidence that the defendant provoked the need to act in self-defense. *Grott*, 195 Wn.2d at 273. Generally, the provoking act cannot be the "'actual assault[;]'" however, this does not apply "where the defendant engaged in a course of aggressive conduct, rather than a single aggressive act." *Id.* at 271 (quoting *State v. Kidd*, 57 Wn. App. 95, 100, 786 P.2d 847, *review denied*, 115 Wn.2d 1010 (1990)). Further, the act must be directed toward the actual victim, "unless the act was likely to provoke a belligerent response from the actual victim." *Kidd*, 57 Wn. App. at 100.

8

Here, the State requested the first aggressor instruction; therefore, we view the evidence in the light most favorable to the State. In viewing the evidence in the light most favorable to the State, the evidence in the record shows that Owens provoked the need to act in self-defense because he was the first to make aggressive physical contact with Meyer by hitting Meyer and taking him to the ground after some of Meyer's "spittle" got onto Owens' face as they were arguing. 2 VRP (Mar. 12, 2020) at 947. Owens corroborated this sequence of events by testifying that he pushed Meyer after Meyer's spit landed in his face. Because there was credible evidence from which a jury could determine that Owens provoked the need to act in self-defense by being the first to make aggressive physical contact with Meyer, we hold that the trial court did not err in giving the first aggressor jury instruction.

3.      Revival Theory Of Self-Defense Jury Instruction

Owens next argues that the trial court erred by not providing his proposed jury instruction of the revival theory of self-defense.

Washington recognizes the revival theory of self-defense. *State v. Dennison*, 115 Wn.2d 609, 617, 801 P.2d 193 (1990). Under this theory, a person found to be a first aggressor may again claim self-defense if the person withdraws from confrontation "at a time and in a manner to let the other person know that he or she is withdrawing or intends to withdraw from further aggressive action." *Riley*, 137 Wn.2d at 909. An instruction on the revival theory of self-defense is "justified only if a reasonable juror could find that defendant had withdrawn from the confrontation." *Dennison*, 115 Wn.2d at 618.

Here, Owens argues that the trial court should have given the revival instruction because "his right to self defense [sic] was revived when he displayed the holstered pistol, with a warning

to stop." Br. of Appellant at 23. But there is no evidence at trial to support giving such an instruction.

At trial, Owens testified that he grabbed his holster and his gun, then told Meyer, "'I've got a f[***]ing gun, stop.'" 3 VRP (Mar. 18, 2020) at 1488. Brandishing a pistol and warning someone to stop does not reflect an attempt to withdraw from aggressive action. *See Dennison*, 115 Wn.2d at 618 (stating the defendant "would have dropped his gun or surrendered" had he truly intended to withdraw from the burglary). Even when viewed in the light most favorable to Owens, no reasonable juror could find that Owens had withdrawn from the confrontation.[3] Rather, Owens' conduct shows that he would use his gun if Meyer did not stop. Owens stated that he wanted the fight to end, but he did not walk away. Instead, Owens stood his ground and displayed his gun, making no showing that he intended to withdraw from the confrontation. Because there is no evidence in the record to show that Owens had withdrawn from the confrontation, we hold that the trial court did not err by not instructing the jury on the revival theory of self-defense.

C.      EXPERT TESTIMONY

Owens argues that the trial court abused its discretion in excluding Gilbertson's expert testimony on use of force. We disagree.

We review a "trial court's evidentiary rulings for abuse of discretion and defer to those rulings unless 'no reasonable person would take the view adopted by the trial court.'" *State v.*

---

[3] Owens argues that he intended his actions to be a withdrawal from aggression, but his subjective belief is irrelevant. *See Riley*, 137 Wn.2d at 909 (the conduct must "let the other person know that he or she is withdrawing or intends to withdraw from further aggressive action"); *Dennison*, 115 Wn.2d at 168 (revival of self-defense justified only when "a reasonable juror could find that defendant had withdrawn from the confrontation").

*Clark*, 187 Wn.2d 641, 648, 389 P.3d 462 (2017) (internal quotation marks omitted) (quoting *State v. Atsbeha*, 142 Wn.2d 904, 914, 16 P.3d 626 (2001)). "A trial court abuses its discretion when its decision is manifestly unreasonable, or when it is based [on] untenable grounds or untenable reasons." *State v. Pratt*, 11 Wn. App. 2d 450, 462, 454 P.3d 875 (2019), *aff'd*, 196 Wn.2d 849, 479 P.3d 680 (2021).

Expert testimony is admissible "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." ER 702. "Testimony in the form of an opinion . . . is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." ER 704.

However, "expert witnesses may not testify as to a defendant's guilt" either by a direct statement or inference. *State v. Hayward*, 152 Wn. App. 632, 649, 217 P.3d 354 (2009). Testifying as to an opinion on the defendant's guilt trespasses on the province of the jury. *Id.* Whether testimony is an opinion regarding guilt depends on the circumstances of the case, including "(1) the type of witness involved, (2) the specific nature of the testimony, (3) the nature of the charges, (4) the type of defense, and (5) the other evidence before the trier of fact." *State v. Hudson*, 150 Wn. App. 646, 653, 208 P.3d 1236 (2009). "[A]sking a witness if the defendant had any reason to defend himself, any reason to pull out a weapon at that time, or any reason to shoot the victim, crosses the line and improperly asks for opinion testimony on the validity of the defendant's self-defense theory, and thus his guilt." *State v. Olmedo*, 112 Wn. App. 525, 531, 49 P.3d 960 (2002), *review denied*, 148 Wn.2d 1019 (2003).

Here, Owens asked Gilbertson to offer an opinion as to whether Owens acted in "lawful self-defense." CP at 34. Thus, Gilbertson, an expert on the lawful use of force by police, was prepared to offer his expert opinion that "Owens employed a reasonable, necessary, and lawful force in self-defense." CP at 44. Such opinions trespass on the province of the jury because it speaks to "the validity of the defendant's self-defense theory, and thus his guilt." *Olmedo*, 112 Wn. App. at 531. Thus, we hold that the trial court did not abuse its discretion in excluding Gilbertson's expert testimony.

## SAG

### A.    SECOND DEGREE MANSLAUGHTER

Owens claims that the trial court erred when it refused to instruct the jury on the lesser offense of second degree manslaughter. "The appellate court may refuse to review any claim of error which was not raised in the trial court." RAP 2.5(a).

Here, Owens did not request that the alternative crime of second degree manslaughter be included. Therefore, the trial court did not refuse to instruct the jury on the lesser offense of second degree manslaughter. Further, Owens did not object to the proposed jury instructions or verdict forms with regard to this issue. Therefore, we do not address Owens' claim.[4]

### B.    JURY INQUIRY

Owens claims that the trial court abused its discretion by improperly instructing the jury on the word "act" because it "had the effect of improperly cutting off Owens' argument that he

---

[4] Failure to instruct on a lesser included offense is not a manifest constitutional error that would implicate RAP 2.5(a)(3). *State v. O'Hara*, 167 Wn.2d 91, 101, 217 P.3d 756 (2009).

was not the first aggressor." SAG at 9.[5] "The appellate court may refuse to review any claim of error which was not raised in the trial court." RAP 2.5(a).

Here, Owens concedes that his defense counsel did not formally object to the trial court's proposed response to the jury. Therefore, we do not address Owens' claim because it is raised for the first time on appeal.

C.     JURY INSTRUCTIONS REGARDING SELF DEFENSE

Owens claims that the trial court failed to provide the jury with proper self-defense instructions. We only consider claims that have not already been adequately addressed on direct appeal. *State v. Thompson*, 169 Wn. App. 436, 493, 290 P.3d 996 (2012).

Here, Owens raised the issues of whether the trial court erred in providing a first aggressor instruction and in not providing an instruction on the theory of revival of the right to self-defense on direct appeal, and those issues are addressed above. Therefore, we do not address Owens' SAG claim because it is addressed on direct appeal.

D.     RIGHT TO HAVE FURNISHED A CERTIFIED COPY OF THE RECORD, PROCEEDINGS, AND DISCOVERY

Owens claims that he was deprived of "his constitutional right to have furnished a certified copy of the entire record, pretrial proceedings, trial proceedings, and discovery." SAG at 10 (boldface omitted) (capitalization omitted). We do not review matters outside the record on direct appeal. *State v. McFarland*, 127 Wn.2d 322, 338, 899 P.2d 1251 (1995). Rather, issues involving

---

[5] We note that the SAG contains no page numbers. For the purposes of our opinion, we number the pages of the SAG 1–13 starting from the first page of the SAG.

facts outside the record are properly raised in a personal restraint petition, not a SAG. *State v. Calvin*, 176 Wn. App. 1, 26, 316 P.3d 496 (2013).

Here, the record on appeal does not contain the facts we would need in order to consider whether Owens was provided a complete copy of the record, proceedings, and discovery. Therefore, we do not address this claim.

The trial court did not err; therefore, we affirm Owens' conviction.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

, C.J.

Lee, C.J.

We concur:

Veljacic, J.

Ashcraft, J.P.T.[6]

---

[6] Judge Ashcraft is serving as a judge pro tempore of the court pursuant to RCW 2.06.150.